

Davis+Gilbert LLP
1675 Broadway
New York, NY 10019

212 468 4800
dglaw.com

**Guy Cohen**
d 212 468 4853
gcohen@dglaw.com

January 28, 2025

**By ECF and Email**
Honorable Analisa Torres
United States District Court
500 Pearl Street
New York, NY 10007-1312

   Re: *Abosch et al. v. Scholastic Entertainment Inc., et al.*, No. 24-cv-08041 (AT)

Dear Judge Torres:

  We write pursuant to Sections III(A) and III(B)(iii) of Your Honor's Individual Practices regarding Scholastic's anticipated motion to dismiss the First Amended Complaint ("FAC").

  **Background**. Scholastic Inc. and Scholastic Entertainment Inc. ("SEI") own all applicable rights to *Goosebumps*, the second-best-selling children's book series in history. In 2016, shortly after the release of a major *Goosebumps* movie, SEI authorized two non-profit children's theater companies to produce a Theater for Young Audiences ("TYA") musical based on *Goosebumps* (the "Play"), provided that SEI would own the copyright as a work-for-hire; the Play could be performed for a limited time at children's theaters, schools and camps but could not be performed at Broadway and Off-Broadway theaters; and the Play's adaptors ("Adaptors") would be entitled to receive 50% of fees paid by licensees but would have no right to exploit the Play. The theaters, in turn, contracted in 2016 with Adaptors Danny Abosch and John Maclay to create the Play ("2016 Agreement"). Adaptors knew at the outset that Scholastic insisted on retaining ownership and control of the Play and would never have ceded critical rights in *Goosebumps* to them. Thrilled to be associated with this world-famous horror series, they went in with their eyes wide open.

  The parties' 2016 understandings are documented in an April 2017 Agreement ("2017 Agreement" or "Agreement"). FAC Ex. F. The 2017 Agreement provides that the Play—defined to include its script, libretto, lyrics, compositions, arrangements and orchestrations—was created as a work-for-hire on SEI's behalf and that "SEI shall be the sole and unlimited owner [of the Play] and of all rights therein throughout the world forever." *Id.* § 5(a). Moreover, the Agreement provides that if the Play does not qualify as a work-for-hire, Adaptors "grant, transfer, and assign all right, title, and interest in and to the Play," including "all copyright," to SEI. *Id.* The parties' arrangement on compensation is further reflected in the Agreement, which provides that licensing revenue will be shared 50/50 between SEI and Adaptors (with Abosch receiving 75% of revenues from separate licensing of music). *Id.* § 7. The Agreement also provides that "SEI shall have no obligation to exploit the Play, it being understood that the only obligation is for SEI to make the payments and provide for credit to be accorded as set forth under this Agreement." *Id.* § 5(a).

  Despite its unambiguous terms, Plaintiffs have for years misinterpreted the Agreement in an effort to stretch it to match their aspirations. Through this litigation, Plaintiffs now belatedly



attempt to rescind the Agreement or rewrite its terms in their favor. Their efforts fail.

**Count I (Declaratory Judgment as to Authorship)**. Under the Copyright Act, a work's creator is its author and initial owner unless it qualifies as a work-for-hire. Plaintiffs seek a declaration of authorship, arguing that the Play does not qualify as a work-for-hire. Scholastic *owns* the Play, however, regardless of its work-for-hire status because, as noted, Plaintiffs assigned their rights to SEI. Regardless, the authorship claim is time-barred. "[A]uthorship claims accrue when plain and express repudiation of authorship is communicated to the claimant, and are barred three years from the time of repudiation." *Horror Inc. v. Miller,* 15 F.4th 232, 257 (2d Cir. 2021). Repudiation occurs "when the defendant first communicates to the plaintiff that the defendant considers the work to be a work-for-hire." *Charles v. Seinfeld,* 803 F. App'x 550, 552 (2d Cir. 2020). According to the FAC, Scholastic asserted that the Play was a work-for-hire in 2015. At minimum, SEI's assertion in the 2017 Agreement "that the Play was created as and constitutes a work-for hire on behalf of SEI" constitutes repudiation as a matter of law. *See Aday v. Sony Music Entm't, Inc.,* 1997 U.S. Dist. LEXIS 14545, at *11–12 (S.D.N.Y. Sep. 24, 1997). A claim seeking to invalidate a work-for-hire provision in a contract must be brought within three years of when "the contracts containing the allegedly invalid 'work for hire' provisions[ ] were entered into." *Id.* Thus, Count I was time-barred three years after the 2017 Agreement went into effect.

**Count II (Fraudulent Inducement)**. Plaintiffs launch a "Hail Mary" in an effort to rescind the 2017 Agreement. Plaintiffs claim Scholastic induced them to enter into the Agreement by misrepresenting "either expressly or through omission"—the FAC doesn't say which—that SEI was not bound by the 2016 Agreement. In fact, so the story goes, SEI "knew it was bound" (FAC ¶ 85), and Plaintiffs relied on Scholastic's misrepresentation to enter into the 2017 Agreement, which must therefore be rescinded to remedy this supposedly grave injustice. Bluntly stated, this claim is ridiculous and suffers from multiple deficiencies. For one, it's time-barred because it wasn't brought within six years of "complet[ing] the act that the alleged fraudulent statements had induced." *Prichard v. 164 Ludlow Corp.*, 49 A.D.3d 408, 408 (1st Dep't 2008). Plaintiffs executed the 2017 Agreement more than *seven* years before they filed suit. Plaintiffs say they didn't discover the fraud until November 2024, but this contrived "discovery" cannot salvage their claim. It's based on Scholastic's counsel's statement *in 2024* that Plaintiffs "transferred all rights to Defendants" in the 2016 Agreement, which Plaintiffs spin as an admission that Scholastic "knew" *in 2016* that it was bound by the 2016 Agreement. (FAC ¶ 92.) But a litigator's 2024 analysis says nothing about what the *former* Scholastic employees who negotiated the 2017 Agreement "knew" in 2016. Furthermore, nothing in Scholastic's counsel's statement indicates that SEI takes the position *now* that it is "bound by" the 2016 Agreement. Scholastic denies that it is so bound.

Relatedly, Plaintiffs fail to plead falsity because, in fact, SEI was *not* bound by the 2016 Agreement. SEI was not a party to that agreement. At most, SEI was a third-party beneficiary of certain provisions of that agreement, such as (as Scholastic's counsel noted) Plaintiffs' acknowledgement that the Play was created as a work-for-hire for SEI's benefit. But a "third-party beneficiary does not, by that status, become a party to the contract or take on any of the



obligations of any party to that contract."  *Krys v. Aaron (In re Refco Inc. Sec. Litig.)*, 890 F. Supp. 2d 332, 351 (S.D.N.Y. 2012).  In addition, Plaintiffs' claim concerns only what SEI allegedly "believed" or "understood" about the legal effect of the 2016 Agreement, classic unactionable statements of opinion.  (FAC ¶¶ 8, 34.)  To the extent Plaintiffs instead seek to plead fraud by omission, they fail because they cannot show that SEI had a duty to disclose its opinions.  *See, e.g.*, *SSA Holdings LLC v. Kaplan*, 120 A.D.3d 1111, 1111 (1st Dep't 2014) ("[T]here was no concealment of the facts . . . and defendants were not bound to volunteer their opinions.").

**Count III (Declaratory Judgment as to Copyright Ownership)**.  In 2018, the parties executed an addendum to the 2017 Agreement ("Addendum") in which Scholastic granted Adaptors a license to create and sell a sound recording and sheet music of the Play's music.  The Addendum grants Plaintiffs ownership of *only* the Cast Album and the Sheet Music; the paragraph on "Copyright Ownership" states that the parties "do not intend to modify, in any manner, the apportionment of rights as set forth in the" 2017 Agreement.  Plaintiffs characterize Count III as concerning ownership of the Cast Album and Sheet Music, but Plaintiffs actually seek to usurp ownership of the Play's musical compositions, which they either never owned or transferred to Scholastic no later than 2017.  But just as Plaintiffs' *authorship* claim is time-barred, so too is Plaintiffs' claim seeking a declaration of *ownership* because it's based on contracts executed in 2017 and 2018.  *See, e.g.*, *Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 118 (2d Cir. 2018).

Moreover, the Addendum's plain language belies Plaintiffs' claim that the copyrights to the compositions were somehow "transferred back" to Plaintiffs.  The parties expressly denied any intent to modify the apportionment of rights in the 2017 Agreement, pursuant to which all rights were assigned to Scholastic.  In addition, Plaintiffs received only a *license* to use the Play's music to produce a *sound recording* and sell *sheet music*, which license becomes *non-exclusive* after a period under the Addendum's terms.  SEI thus may authorize new licensees to use the music to create recordings and sheet music—a right that wouldn't exist if the compositions had been "transferred back."  Finally, the Addendum lacks any language—such as "transfer," "assign" or "grant"—indicating intent to transfer copyrights; the contract simply says that Plaintiffs would own copyrights to the Cast Album and Sheet Music, not to the compositions or other elements.

**Counts VI & X (Breach of Contract; Declaratory Judgment as to SEI's Obligations)**.  Plaintiffs allege that Scholastic breached the 2017 Agreement's implied covenant of good faith and fair dealing by failing to "make reasonable efforts to license the Play."  Notably, however, Plaintiffs do not dispute that, consistent with its status as a TYA musical, Scholastic has continuously licensed the Play to regional theaters, schools and camps.  Plaintiffs' *real* complaint is that Scholastic has not marketed the Play with the goal of reaching Broadway.  But Scholastic has no such obligation.  Any claim that Scholastic's existing licensing of the Play constitutes a breach would negate Plaintiffs' agreement that SEI "shall have no obligation to exploit the Play."  The "covenant of good faith and fair dealing cannot negate express provisions of the agreement." *Vendome v. Oldenburg,* 198 A.D.3d 450, 451(1st Dep't 2021).  As Your Honor has recognized, "if the contract includes an expressly bargained-for clause that allows a party to exercise its



discretion with no limits, the covenant cannot negate that clause." *Silony Med. Int'l, AG v. SWK Funding LLC*, 2024 U.S. Dist. LEXIS 29094, at *5-6 (S.D.N.Y. Feb. 20, 2024) (Torres, J.).

Plaintiffs' corresponding declaratory judgment claim—premised on the notion that the no-obligation-to-exploit provision renders the 2017 Agreement "illusory for lack of mutuality" and thus unenforceable—fails for several related reasons. First, such claim is barred by the statute of limitations. *GB Lodging, LLC v. Rodriguez*, 2022 U.S. Dist. LEXIS 48758, at *11 (S.D.N.Y. Mar. 18, 2022). Second, New York courts strongly disfavor any interpretation that renders a contract illusory and unenforceable, "particularly where[ ] the parties have expressed their intent to be contractually bound in a writing." *Wca Holdings III LLC v. Panasonic Avionics Corp.*, 704 F. Supp. 3d 473, 495 (S.D.N.Y. 2023). Third, New York law requires consideration—not "mutuality"—to form a valid contract. *Id.* Plaintiffs ignore the substantial consideration they received, and courts will not inquire into the "value or measurability" of consideration "so long as it is acceptable to the promisee" when the contract is executed, which is the case here. *Weiner v. McGraw-Hill*, 57 N.Y.2d 458, 464 (1982). Fourth, "lack of mutuality of consideration at inception may be cured by subsequent performance of the parties." *Aquavit Pharms., Inc v. U-Bio Med, Inc*, 2020 U.S. Dist. LEXIS 28639, at *7 (S.D.N.Y. Feb. 19, 2020). Plaintiffs concede that Scholastic has been licensing the Play for years. Thus, "any previous lack of mutuality was cured." *Id.*

**Counts VII & VIII (Negligent and Fraudulent Misrepresentation)**. Plaintiffs allege that Scholastic's statement that "Sony is no longer a party" negligently and fraudulently induced them to spend more than they would have on a cast album in hopes that "Broadway and Off-Broadway opportunities were on the table." (FAC ¶ 61.) Scholastic has never represented that such opportunities were "on the table." Still, Plaintiffs claim to believe that their Broadway aspirations were more likely to be realized if Sony, which has been granted certain stage-production rights, had no stake in the Play. Both alleged misrepresentation claims are barred under a six-year statute of limitations. Plaintiffs' counsel recently asserted that the claims did not accrue until Plaintiffs spent money on the Cast Album in 2019, but the FAC contains no such allegation. Plaintiffs also fail to allege a "special relationship" for the negligent misrepresentation claim; they theorize that such a relationship exists where an agent represents both parties to a transaction, but they offer no supporting authority. In addition, New York law forecloses reliance on a representation that is "negated by the terms of a contract," *Perrotti v. Becker, Glynn, Melamed & Muffly LLP*, 82 A.D.3d 495, 498 (1st Dep't 2011), and the 2017 Agreement provides that Scholastic is not obligated to exploit the Play—on Broadway or otherwise. As to scienter, the FAC's conclusory allegation that SEI somehow "benefitted" by "intentionally deceiving" Plaintiffs to spend more money on a cast album is unsupported by factual allegations. (FAC ¶ 61.)

**Count IX (Breach of Fiduciary Duty)**. Plaintiffs' last-ditch claim for breach of fiduciary duty fails because (1) there is no fiduciary relationship between the parties as a matter of law, and (2) the claim is foreclosed by Plaintiffs' breach of contract claim.

For these and additional reasons to be addressed in its motion, Scholastic intends to file a motion to dismiss Counts I, II, III, VI, VII, VIII, IX and X of the FAC.



Hon. Analisa Torres
January 28, 2025
Page 5

        Respectfully submitted,

        */s/ Guy Cohen*

        Guy Cohen

cc:    Lacy H. Koonce (by ECF)