# KLARIS

By ECF and Email                                                                                      February 4, 2025

Honorable Analisa Torres
United States District Court
500 Pearl Street
New York, NY 10007-1312

Re: *Abosch et al. v. Scholastic Entertainment Inc., et al.* (No. 24-cv-08041)

Dear Judge Torres,

We respond on behalf of Plaintiffs to Defendants' January 28, 2025 letter pursuant to Your Honor's Special Rules for Motions to Dismiss. The parties exchanged first-round letters and Plaintiffs were granted leave to amend their pleading, and did so. *See* ECF No. 28 ("FAC"). In Defendants' second-round letter in support of their planned partial motion to dismiss, they largely plow ahead with the same arguments as in their first round letter and never even mention the amendments, much less address them.

This case involves three contracts, executed in 2016, 2017, and 2018, as well as the Parties' performance thereunder. The Parties fundamentally disagree on the interpretation of each. Defendants cherry-pick provisions from each agreement they claim are "unambiguous," but to do so they simply ignore language they dislike (*e.g.*, ignoring provision in 2018 agreement that copyrights in and to the Cast Album and Sheet Music "remain solely-owned" by Plaintiffs). Further, on the face of their letter Defendants make unsupported factual allegations about the Parties' state of mind when contracting (*e.g.*, "Thrilled to be associated with this world-famous horror series, [Plaintiffs] went in with their eyes wide open"; "The parties' 2016 understandings are documented in an April 2017 Agreement. . .") and the parties' representations ("Scholastic has never represented that such opportunities were "on the table"). Defendants even cite the FAC as "conced[ing]" things it plainly does not say, such as that "Scholastic asserted that the Play was a work-for-hire in 2015" (which Defendants imply means that Plaintiffs agree that Scholastic repudiated Plaintiff's authorship at that time) when the FAC instead says that "SEI insisted on the inclusion of (ineffective) work-for-hire language in its contracts […] *even if Authors believed it to be legally ineffective*." FAC ¶ 31 (emphasis added). Defendants' letter serves only to show that their proposed partial motion is not directed only to questions of law, and thus will be futile.

As just one further example, from the incomplete, misleading "Background" section of their letter, Defendants assert that SEI authorized production of the Play on the condition that it "could not be performed at Broadway and Off-Broadway theaters" and that Plaintiffs "would have no right to exploit the Play." This is factually untrue. Not only did Defendants' (dual) agent, Susan Gurman, *at no point* communicate any such restrictions, in her initial pitch to Plaintiffs she sold the project by *affirmatively representing* that she hoped for the Play to be performed on Broadway.[1] Also, Section 8(b) of the 2016 Agreement *explicitly provides* Plaintiffs the right to independently exploit the Play.[2]

---

[1] In a December 1, 2015 email, Gurman wrote: "Yes. GOOSEBUMPS – 400 million books in print. I rep it on behalf of Scholastic so if it moves forward, I'll negotiate it but not commission it. I worked hard to get it out there and would also like to see a Broadway show which I'm also working on at the same time."

[2] *See* FAC Ex. G, Section 8(b): "Adaptors may also themselves license or cause the licensing of the Play to third-parties ("Adaptors Third-Party Licenses"), in any territory, and in perpetuity, irrespective of any provision of Paragraph 1 hereinabove which may be arguably construed or interpreted to the contrary."

# KLARIS

**Count I**: In their initial pre-motion letter, Defendants argued that "Count I should be dismissed because there is no 'actual controversy' under the Declaratory Judgment Act" as "Defendants agree that Abosch and Maclay are the authors of the Play." After reviewing Plaintiffs' response letter, Defendants made an about-face and sent a new letter purporting to "withdraw" the earlier admission, and then argued that Count I should be dismissed not on mootness grounds, but because it was time-barred. Notwithstanding that this second letter was not contemplated by Your Honor's pre-motion procedure, Plaintiffs nonetheless addressed the limitations argument in their amended pleading, and set forth Defendants' shifting positions on this issue over the years. FAC ¶¶ 65-76. Specifically, Plaintiffs allege that (1) there was no "plain and express repudiation" of Plaintiffs' authorship in 2017 (or earlier) as all parties knew the work-for-hire provision was ineffective, and thus it was not "adverse" to Plaintiffs' authorship; (2) October 21, 2021 was the first time SEI expressly took the position it believed the 2017 Agreement's work-for-hire language was effective (within the three-year statute of limitations); and (3) in November 2024, SEI flip-flopped and asserted that the work-for-hire provision was *not* effective, eliminating any supposed prior "repudiation." Defendants ignores these factual allegations pled directly in response to their arguments, and argue only that "SEI's assertion in the 2017 Agreement 'that the Play was created as and constitutes a work-for hire on behalf of SEI' constitutes repudiation as a matter of law." Given the disputed issues of fact here, Defendants' motion would be futile.

Defendants' argument also fails on the law. For their assertion that contractual work-for-hire language can itself constitute "plain and express repudiation" of authorship, Defendants rely on an unpublished case not concerning statutory termination (*Aday*) and ignore this Court's more recent holding that Authors' right to challenge an invalid work-for-hire clause "could not have accrued upon the signing of their contracts", because "[t]o restrict the termination right based on the artist's failure to bring a claim within three years of signing [an] agreement […] would thwart Congress's intent and eviscerate the right itself." *Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430, 438 (S.D.N.Y. 2020). Further, even accepting SEI's argument *arguendo*, it would be *Plaintiffs* that first repudiated *Defendants'* purported "authorship" in this manner, by including language in the 2016 Agreement expressly declaring Plaintiffs the "Authors" of the Play. FAC ¶ 37. Finally, Defendants' reliance on the non-precedential *Seinfeld* opinion come to nothing; the quoted text summarizes *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 318 (2d Cir. 2013), which *rejected* SEI's argument. There, it was only a 2004 letter, and *not* a 1978 contract, that constituted "repudiation".

**Count II**: In their November 11 letter, Defendants argued that the 2016 Agreement "unambiguously" "transferred all rights to Defendants," thus conceding they believed such agreement to be binding on both parties. *See, e.g.*, *TransformaCon, Inc. v. Vista Equity Partners, Inc.*, 2015 WL 4461769 (S.D.N.Y. July 21, 2015) (non-signatory assumes obligations of a contract when it participated in the negotiation process, and provided ultimate approval over and benefited from the contract's terms). Now, in the face of the resulting fraudulent inducement count, Defendants attempt to withdraw those statements and claim instead that their "ownership" arose in the *2017* Agreement, because they were "***not*** bound by the 2016 Agreement" (emphasis in original). Defendants cannot have it both ways. Either they were bound in 2016 and made false representations that they were not, thus inducing Plaintiffs into acquiescing to far less favorable terms in 2017, or neither party is bound by the 2016 Agreement.[3] In any event, Defendants'

---

[3] Defendants cannot now cherry-pick the 2016 Agreement's benefits without accepting its obligations, under the guise of being a "third-party beneficiary" of only "certain provisions" (presumably only the ones they like). This is particularly true where their own agent induced the agreement – Defendants could have, instead, promptly rescinded and made restitution

# KLARIS

perpetually inconsistent positions on the efficacy and application of the 2016 Agreement renders this issue subject to multiple disputes of fact and incapable of being decided on a Motion to Dismiss.

Further, this cause of action does not concern "unactionable statements of opinion"; the FAC clearly alleges that "SEI fraudulently induced the 2017 Agreement by materially misrepresenting to Authors through its agent either expressly or through omission that it was not bound by the 2016 Agreement, when SEI in fact knew it was bound by that agreement." FAC ¶ 85. Indeed, Defendants take this argument to an absurd length, arguing not only that in 2016 SEI was only expressing an "opinion" about being bound by the contract, but that it was doing the same recently when it expressed the opposite "opinion" as a result of "a litigator's 2024 analysis." Yet in neither case were these positions stated as "opinions" – they were stated as facts supporting SEI's actions. The fact that SEI flip-flopped shows only that it cynically takes whatever position suits it best at a given juncture, but in each instance it has clearly intended Plaintiffs to rely on it, to their detriment. Further, even opinions "may be actionable upon a showing that the defendants did not genuinely or reasonably believe the positive opinions they touted" or where – as here – the opinions "imply certainty." *Caldwell v. Archdiocese of New York*, 2021 WL 1999421, *5 (S.D.N.Y. May 19, 2021) (citations omitted).

**Count III:** Defendants also argued in their first pre-motion letter that the Cast Album Addendum "explicitly limited Plaintiffs' ownership to the sound recording for the cast album and sheet music." In response, Plaintiffs explained that not only is said limitation not "explicit," it is untrue on the face of the agreement, which provides that "all copyrights in and to the Cast Album and Sheet Music shall be and remain solely-owned by Adaptors" and that such prevails over anything to the contrary in the 2017 Agreement. As Plaintiffs explain in the FAC, copyrights *in and to* the Cast Album and Sheet Music include the compositions, orchestrations, and arrangements comprising the same. ¶ 51. Plaintiffs then amended their pleading to expressly allege that "[a]s ownership of the Compositions had been retained by Authors pursuant to the 2017 Agreement, the Cast Album Addendum merely confirmed Authors' ownership of the Compositions as constituent elements of the Cast album and Sheet Music. Alternatively, even if the Compositions had been assigned under an earlier agreement, the 'solely-owned' language referring to the Sheet Music and Cast Album in 2018 constitutes a transfer back of such rights." ¶ 52. Defendants simply ignore the new allegations, make no attempt to explain what "ownership of the Cast Album and Sheet Music" extends to in practice if not these constituent parts, and entirely disregard the "solely-owned" language. Instead, SEI urges a nonsensical reading which requires the parties to have intended the second sentence as rendering the first entirely meaningless. Even if the plain language was reasonably susceptible to that interpretation (it is not), it is also susceptible to Plaintiffs' interpretation – that it merely preserves the existing 50/50 apportionment of the "right to share in revenue" (¶ 7 of the 2017 Agreement, using similar verbiage). This is at most an ambiguity, which cannot be resolved on a motion to dismiss.[4]

SEI also incomprehensibly asserts that the statute of limitations bars a "declaration of *ownership* because it's based on contracts executed in 2017 and 2018," and supports this solely with a reference to *Wilson v. Dynatone Publ'g Co.*, which held no such thing (it held that a songwriter's ownership claim *was not* untimely, *even* where a publisher registered the copyright as work-for-hire four decades earlier). Once

---

once they learned of Gurman's misrepresentations. However, once they elected to accept the benefits, they became bound by any promises their agent made to procure those benefits. *See Bennett v. Judson*, 21 N.Y. 238, 239-40 (N.Y. 1860).

# KLARIS

again, SEI fails to understand that the "express repudiation" line of cases requires some act that is "adverse" to the claimed right – which these contracts are not. Further, even the premise is incorrect, as Authors' claim of ownership is not "based on contracts"; it arises under §201(a) of the Copyright Act.

**Counts VI & X:** As Defendants previously raised, and Plaintiffs then addressed, in their first round of letters and FAC respectively, Defendants cannot use the "no obligation to exploit" provision as justification for precluding Plaintiffs from receiving the benefits they bargained for. The Parties clearly dispute the interpretation of this provision, the scope of Defendants' implied covenants of good faith and fair dealing, and the applicability of both in the context of the Agreement as a whole. It is not therefore appropriate to determine these questions on a motion to dismiss. Further, Plaintiffs do, in fact, dispute that SEI has "continuously licensed the Play" (¶ 63, 64). The claim is timely, as the "direct claim" is breach (including anticipatory), which accrues from the date of the breach, not the contract. Unlike the *GB Lodging* plaintiffs, the Plaintiffs here do allege a recent breach (¶ 64) and do not seek the declaration merely as a preemptive defense. Defendants claim that New York contracts do not require "mutuality," but in the same breath contradict this in attempting to explain how a lack of mutuality may be "cured." Defendants also continue to misunderstand that Plaintiffs' allegation is not *inadequate* consideration, but *no* consideration. Defendants point only to consideration Plaintiffs were already entitled to prior to the 2017 Agreement. Plaintiffs have already explained to Defendants why *Aquavit Pharms.* does not support the argument here that once SEI engaged in *any* licensing, its obligations were met for all time.

**Counts VII & VIII:** Contrary to Defendants' letter, Defendants expressly represented that Broadway was on the table for the Play (*see supra* footnote 1), and Plaintiffs only discovered in 2022 that the right to Broadway had been granted to Sony, despite Defendants' earlier representations and false statements in 2018 that Sony was "no longer a party." ¶ 59. The FAC also clearly alleges that such claims accrued when Plaintiffs spent money on the Cast Album in 2019. ¶¶ 61, 116-120. Defendants then merely repeat the conclusory contention that Plaintiffs failed to allege a "special relationship" and argue this claim should fail because Plaintiffs "offer no supporting authority." This completely disregards Plaintiffs' additions in the FAC addressing this very point. ¶¶ 109-112. *See also Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41 (2d Cir. 1997) (failure in complaint to cite statute in no way affects merits of claim); Lastly, Defendants' attempts to argue that the terms of the 2017 Agreement foreclose a claim of misrepresentation fail to account for Count II of the FAC. ¶¶ 84 – 93. If the Court finds that Plaintiffs were fraudulently induced to enter into the 2017 Agreement, and entitled to rescind, there will be no such terms on which foreclosure may be based. In any event, the fact-intensive nature of these claims makes this inappropriate for a motion to dismiss.

**Count IX:** As explained in the FAC, Defendants were entrusted with sole control over the exploitation of the Play and payment to Plaintiffs, with a fiduciary duty to maximize revenues (*see* ¶ 122). Defendants provide no authority for their conclusion that there is "no fiduciary relationship as a matter of law." As "fiduciary duties rest upon principles of equity and fairness, courts [have] refrained from defining the precise parameters of the circumstances from which they may arise." *CBS, Inc. v. Ahern*, 108 F.R.D. 14, 25–26 (S.D.N.Y. 1985).

Sincerely,

Lance Koonce