UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANOMALOUS PRODUCTIONS, LLC; DANNY
ABOSCH; and JOHN MACLAY,

                Plaintiffs,

    vs.

SCHOLASTIC ENTERTAINMENT INC.; and
SCHOLASTIC INC.,

                Defendants.

Civil Case No. 1:24-cv-08041

Hon. Analisa Torres

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

**DAVIS+GILBERT LLP**
Guy Cohen
Jacklyn M. Siegel
William S. Kukin
1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com
jseigel@dglaw.com
wkukin@dglaw.com

*Attorneys for Defendants Scholastic Inc. and
Scholastic Entertainment Inc.*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ......................................................................................................................... 1

    I.    ADAPTORS' AUTHORSHIP CLAIM IS TIME-BARRED ..................................... 1

    II.   ADAPTORS' OWNERSHIP CLAIM FAILS ............................................................ 4

    III.  THE 2017 AGREEMENT IS ENFORCEABLE ......................................................... 6

        A.    Adaptors Cannot Rescind the Agreement ........................................................... 6

        B.    Adaptors Cannot Rewrite the Agreement ........................................................... 8

        C.    Adaptors Cannot Void the Agreement ............................................................... 9

    IV.  THE MISREPRESENTATION CLAIMS FAIL ......................................................... 9

    V.   COUNT IX FAILS ..................................................................................................... 11

CONCLUSION ...................................................................................................................... 12

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Ackoff-Ortega v. Windswept Pac. Entm't Co.*, 120 F. Supp. 2d 273, 280 (S.D.N.Y. 2000) ........... 3

*Aday v. Sony Music Entm't, Inc.*, 1997 U.S. Dist. LEXIS 14545 (S.D.N.Y. Sep. 24, 1997) ......... 3

*Berry v. Am. Cent. Ins. Co. of St. Louis*, 132 N.Y. 49 (1892) ................................................... 7

*Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425 (S.D.N.Y. 2004) ................ 3

*Brownstein v. Lindsay*, 742 F.3d 55 (3d Cir. 2014) ................................................................ 2

*Charles v. Seinfeld*, 410 F. Supp. 3d 656 (S.D.N.Y. 2019) ..................................................... 2

*Charles v. Seinfeld*, 803 F. App'x 550 (2d Cir. 2020) ............................................................ 1

*DWPN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145 (2d Cir. 2014) ................... 7

*Everly v. Everly*, 958 F.3d 442 (6th Cir. 2020) ............................................................... 1, 3

*Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302 (2d Cir. 2013) ................ 2

*Hernandez v. 2400 Amsterdam Ave. Realty Corp.*, 2024 U.S. Dist. LEXIS 53854 (S.D.N.Y. Mar. 26, 2024) ....................................................................................................... 7

*Horror Inc. v. Miller*, 15 F.4th 232 (2d Cir. 2021) ........................................................... 1, 3

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) ..................................................................... 10

*Kassab v. Kasab*, 137 A.D.3d 1135 (2d Dep't 2016) .............................................................. 9

*Licette Music Corp. v. A.A. Records, Inc.*, 601 N.Y.S.2d 297 (1st Dep't 1993) .......................... 11

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007) ..................................................... 9

*Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996) ........................................................................ 1

*Moran v. Erk*, 11 N.Y.3d 452 (N.Y. 2008) ............................................................................. 8

*Phx. Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568 (S.D.N.Y. 2021) ............ 10

*Riverside Syndicate, Inc. v Munroe*, 10 N.Y.3d 18 (2008) ..................................................... 9

*Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 2018 U.S. Dist. LEXIS 114576 (S.D.N.Y. June 28, 2018) ................................................................................................. 9

*S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497 (S.D.N.Y. 2021) ............. 8

*Silony Med. Int'l, AG v. SWK Funding LLC*, 2024 U.S. Dist. LEXIS 29094 (S.D.N.Y. Feb. 20, 2024) .................................................................................................................... 8

*Swan v. EMI Music Publ'g*, 2000 U.S. Dist. LEXIS 15085 (S.D.N.Y. Oct. 13, 2000) ............ 3, 12

*Tesler v. Cacace*, 607 F. App'x 87 (2d Cir. 2015) ......................................................................... 9

*Universal-MCA Music Publ. v. Bad Boy Entm't*, 2003 NY Slip Op 51037(U) (Sup. Ct., N.Y. Cty.) ........................................................................................................................... 12

*Urbont v. Sony Music Entm't*, 831 F.3d 80 (2d Cir. 2016) ............................................................ 4

*Waite v. UMG Recordings, Inc.*, 450 F. Supp. 3d 430 (S.D.N.Y. 2020) ........................................ 3

*Walker v. Thompson*, 404 F. Supp. 3d 819 (S.D.N.Y. 2019) ........................................................ 5

*Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112 (2d Cir. 2018) .................................................. 1, 4

**PRELIMINARY STATEMENT**

Scholastic's opening brief showed that Adaptors knowingly developed the Play on the express condition that Scholastic would retain complete ownership and control over it. Scholastic would never have ceded—and did not cede—critical rights to its valuable *Goosebumps* franchise to two relatively unknown authors. Adaptors' brief confirms what was obvious from the FAC: They have intentionally misinterpreted the underlying contracts—and applicable case law—in an unavailing effort to escape the unambiguous terms of their deal with Scholastic. Adaptors' appeals to sympathy do not transform baseless legal claims into viable ones. The Court should grant Scholastic's Motion in its entirety.

**ARGUMENT**

**I.   ADAPTORS' AUTHORSHIP CLAIM IS TIME-BARRED**

Bewailing the very existence of the SOL, Adaptors reluctantly acknowledge that "some courts" hold that authorship claims accrue upon "express repudiation." (Opp. 5).[1] One such court is the Second Circuit, which holds that authorship claims accrue "when plain and express repudiation of authorship is communicated to the claimant," *Horror Inc. v. Miller*, 15 F.4th 232, 257 (2d Cir. 2021); and such repudiation occurs "when the defendant first communicates to the plaintiff that the defendant considers the work to be a work-for-hire." *Charles v. Seinfeld*, 803 F. App'x 550, 552 (2d Cir. 2020); *see Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 119 (2d Cir. 2018) ("[A]sserting ownership as work for hire would effectively repudiate Plaintiffs' claims."). Accordingly, Adaptors' claim accrued at least upon execution of the Agreement, which states that "the Play was created as and constitutes a work-for-hire," and that Scholastic is the "sole and

---

[1] The SOL is "integral to a properly functioning copyright market." *Merchant v. Levy*, 92 F.3d 51, 56-57 (2d Cir. 1996). "Allowing authors to sleep on their rights even after they have been repudiated would inject instability into an area of copyright law that calls out for certainty." *Everly v. Everly*, 958 F.3d 442, 453 (6th Cir. 2020).

unlimited owner" of all rights with "the sole and absolute right to copyright the Play as copyright author."

Despite this crystal-clear language, Adaptors say there was no repudiation because they were unaware their rights were disputed. This is nonsense. It's also irrelevant; Adaptors' subjective belief has no bearing on the SOL. The law requires only sufficient notice to put a "reasonably diligent plaintiff on inquiry." *Gary Friedrich Enters., LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 318 (2d Cir. 2013). In *Seinfeld*, for example, the district court found—and the Second Circuit affirmed—repudiation based on one conversation where Seinfeld "made it clear that [plaintiff's] involvement was to be on a 'work-for-hire' basis." *Charles v. Seinfeld*, 410 F. Supp. 3d 656, 660 (S.D.N.Y. 2019). Even though Seinfeld "did not expressly claim ownership for himself during these conversations," "a reasonably diligent plaintiff would have understood" their rights were disputed. *Id.* The circumstances here are even clearer: Scholastic "insisted" to Adaptors that the Play is a work-for-hire several times, and Adaptors signed ***two*** contracts characterizing it as such. These events put Adaptors on notice of an authorship dispute.

Adaptors nevertheless contend that mere "words in a contract" aren't repudiation if "the other party disputes their meaning." Again, Adaptors' subjective understanding is irrelevant. (Br. 10-11.) Unambiguous words in a contract are, in fact, sufficient to establish repudiation. *See, e.g.*, *Marvel*, 716 F.3d at 317 (claim accrues upon receipt of "contract identifying the defendant as the sole owner and copyright holder"); *Brownstein v. Lindsay*, 742 F.3d 55, 71 (3d Cir. 2014) (repudiation occurs if defendant claims sole authorship "in an agreement").[2]

*Aday v. Sony Music Entm't, Inc.* applies these principles: an authorship claim must be

---

[2] The FAC alleges only that ***Adaptors*** believed the work-for-hire provision was ineffective; ***Scholastic*** repeatedly "insisted" on it (FAC ¶31, 65-66), contradicting Adaptors' suggestion that Scholastic "understood" that work-for-hire was "ineffective."

2

brought within three years of entering "the contracts containing the allegedly invalid 'work for hire' provisions." 1997 U.S. Dist. LEXIS 14545, at *11-12 (S.D.N.Y. Sep. 24, 1997). *Waite v. UMG Recordings, Inc.* is inapposite because, unlike *Aday*, *Waite* involved only an "indirect[ ] challenge to the validity of [the] 'works-made-for-hire' provisions by virtue of [plaintiffs'] infringement claims." 450 F. Supp. 3d 430, 437 (S.D.N.Y. 2020). The *Waite* court distinguished *Aday* because "unlike Meat Loaf in *Aday*, the gravamen of" the claims in *Waite* was "defendant's refusal to recognize [plaintiffs'] termination rights," which are "by their very nature, about the nature, extent, or scope of copying"—not about directly challenging a work-for-hire provision.

Adaptors' other cases are distinguishable. The repudiation in *Everly* was a contract transferring *ownership* that did not expressly dispute *authorship*. 958 F.3d at 456-58. The alleged repudiations in *Horror*, 15 F.4th at 257-58 and *Swan v. EMI Music Publ'g*, 2000 U.S. Dist. LEXIS 15085, at *10-12 (S.D.N.Y. Oct. 13, 2000), arose from a copyright notice and a copyright registration form that were not communicated to the plaintiff. And *Blue Planet Software, Inc. v. Games Int'l, LLC* concerned disputed trademarks, not copyrights; thus, the Act's SOL was "inapplicable." 334 F. Supp. 2d 425, 440 (S.D.N.Y. 2004).

Adaptors' alternative argument, that Scholastic's repudiation was "withdrawn" in recent correspondence, is baseless. In *Ackoff-Ortega v. Windswept Pac. Entm't Co.*, the defendant sent a letter arguably repudiating the authorship of a plaintiff who was identified on copyright registrations as co-author of a song. 120 F. Supp. 2d 273, 280 (S.D.N.Y. 2000). But less than a year after sending the letter and before the SOL would have expired, the defendant effectively "withdrew" the repudiation by filing a formal registration with the Copyright Office again listing the plaintiff as co-author. *Id.* Here, in contrast, the statements—which were corrected within days—were contained in private correspondence (not in an official copyright filing) months *after*

3

Adaptors sued and years *after* the SOL expired.

## II. ADAPTORS' OWNERSHIP CLAIM FAILS

Count III fails for numerous reasons.[3] *First*, to the extent Adaptors claim ownership under §201 of the Act, which vests initial ownership in the author, the claim is untimely for the same reasons as Count I.

*Second*, Adaptors' claim is time-barred because it accrued upon execution of the Agreement. Adaptors claim they privately "believed" ownership to be "undisputed until October 2021." But, again, the SOL does not turn on Adaptors' beliefs; it's triggered "when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right." *Wilson*, 892 F.3d at 118. The claim accrued with the Agreement's assignment to Scholastic of all rights to the Play. (Br. 11-12.) Scholastic never "withdrew" its position on ownership. Adaptors cherry-pick a sentence from an email that, in context, plainly refers to Adaptors' ownership of the sound recordings comprising the Cast Album, not underlying compositions; in fact, Scholastic specifically clarified in the same email chain: "Compositions—Owned by SEI." (FAC Ex. I, ECF 28-1 at 69.) Moreover, the purported "withdrawal" occurred *after* the SOL had expired.

*Third*, the relevant contracts unambiguously grant Scholastic ownership of the Play and all its parts. The Agreement describes and defines the portions of the Play written by Maclay (the Script, Libretto, and lyrics) and by Abosch (the Compositions, Orchestrations, Arrangements, and Orchestral Tracks), and then states that Scholastic owns the copyright "in and to the Play (including without limitation the Script, Libretto, Lyrics, Compositions, Arrangements, Orchestrations, and Orchestral Tracks) and all components of the foregoing." The separately identified portions

---

[3] Any presumption associated with Adaptors' copyright registrations is rebuttable and "validity will not be assumed" where, as here, other evidence "casts doubt on the question." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 89 (2d Cir. 2016).

4

collectively comprise the *whole* Play.

Notwithstanding this detailed description, Adaptors contend that "Play" somehow does not include the portions of the Play *specifically listed* in §5(a). Nonsense. Adaptors' interpretation would render the entire description of the Play "meaningless" and thwart the "clear intent" of §5(a). *Walker v. Thompson*, 404 F. Supp. 3d 819, 823 (S.D.N.Y. 2019) (Torres, J.). Moreover, Adaptors specifically assigned to Scholastic "the Play *or any portion thereof*"—a phrase that can only refer to the components listed earlier in §5(a). In short, the "entire intent" of §5(a) "would be eroded" under Adaptors' interpretation. *Id.* at 825.

The 2018 Addendum is equally clear that Scholastic retains ownership of the Play, including all musical elements, because it contains no words indicating intent to transfer copyrights, such as "transfer," "assign" or "grant"; "Cast Album" and "Sheet Music" are terms that expressly do not include the Play's underlying components[4]; the parties expressed their intent in §3 *not* to transfer any such rights; and the Addendum gives Adaptors a *license*, which would be superfluous if Scholastic had transferred the compositions. In short, the Addendum gave Adaptors the right to create and own a sound recording and sheet music, without altering in any way the Agreement's terms.

Adaptors frivolously argue that "apportionment" in §3 refers to division of revenues, not copyright ownership. First, the sentence containing "apportionment" appears in the "Copyright Ownership" section, not in a section on revenues. Second, Adaptors' interpretation ignores the next two words: "apportionment *of rights*." Third, the sentence at issue immediately follows a

---

[4] Adaptors feign confusion about the meaning of "Sheet Music," which simply refers to the written representation of the underlying compositions, not the compositions themselves—as confirmed by the Addendum's reference to Adaptors' ownership of the "digital and/or print format" of Sheet Music.

sentence acknowledging Adaptors' ownership of the copyrights to the Cast Album and Sheet Music, thus emphasizing that Adaptor's ownership was strictly limited to those items, and not to the underlying compositions. Thus, in context, "apportionment of rights" refers to the division of *ownership rights* in the Agreement.

Fourth, Adaptors argue that apportionment cannot refer to a 100/0 split. Sure it can. Indeed, the sentence itself concerns the "apportionment of rights…with respect to the ***Book*** or the Play." Adaptors have no ownership interest in the original *Goosebumps* book, as confirmed by their acknowledgment that "all rights of any kind or nature in the Book were and are solely vested in SEI." (FAC Ex. F, §4.) Just as the "apportionment of rights" in the Book can be 100/0, so too can the apportionment of rights in the Play.

Finally, Scholastic's right to issue non-exclusive licenses as set forth in §2 of the Addendum would be meaningless if Adaptors owned the compositions. Rather than acknowledging the Addendum's plain meaning, Adaptors hypothesize that a third party could obtain a license from Scholastic to use the underlying *Goosebumps* property and then obtain a compulsory license under the Act to create recordings of the compositions, thereby circumventing Adaptors (as supposed owners of the compositions). But even this far-fetched scenario cannot explain how Scholastic could possibly issue a license to produce and sell sheet music unless it owns the underlying compositions.

## III. THE 2017 AGREEMENT IS ENFORCEABLE

### A. Adaptors Cannot Rescind the Agreement

Count II is time-barred. Adaptors cite no case law indicating that litigation counsel's statement about transferring rights in the 2016 Agreement—conveyed privately after litigation commenced—could somehow extend the SOL. It cannot. Moreover, the alleged "discovery" is a sham. Adaptors fail to address—and thus concede—that the statement in no way indicates that

Scholastic *now* takes the position that it is "bound by" the 2016 Agreement.

Count II also fails to satisfy Rule 9(b). Despite Adaptors' (apparent) concession that Count II is based solely on omissions, rather than affirmative misstatements, the FAC still must explain why the alleged omissions were fraudulent *when made*. The sole basis of Count II is Scholastic's counsel's statement in *2024*. Adaptors plead no facts supporting the allegation that Scholastic believed *in 2016 or 2017* that it was bound by the 2016 Agreement. Adaptors "fail[] to respond to" this point, and thus "effectively concede" that Count II fails under Rule 9(b). *Hernandez v. 2400 Amsterdam Ave. Realty Corp.*, 2024 U.S. Dist. LEXIS 53854, at *12 (S.D.N.Y. Mar. 26, 2024) (Torres, J.).

Count II should separately be dismissed because Adaptors cannot plead falsity. Scholastic, as a third-party beneficiary, was not bound by the 2016 Agreement. (*See* Br. 16-17.) Adaptors argue for an exception to this rule, by which beneficiaries might become bound by a contract if they "exhibit acceptance" through an agent. But the FAC *specifically alleges* that "Gurman further relayed [to Adaptors] that SEI did not intend to be a party" and that "SEI refused to be a signatory" to the 2016 Agreement. (FAC ¶¶32, 34.) The Court cannot accept Adaptors' conclusory "general allegations that are contradicted by more specific allegations in the Complaint." *DWPN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 152 (2d Cir. 2014). Moreover, the primary case cited by Adaptors—*Berry v. Am. Cent. Ins. Co. of St. Louis*, 132 N.Y. 49 (1892)—does not involve third party beneficiaries at all and has no application here.[5]

Separately, Scholastic had no duty to disclose its opinion about whether it believed it was bound by the 2016 Agreement. Adaptors do not meaningfully respond, instead asserting without

---

[5] In *Krasemann v. Scholastic Inc.*, Scholastic argued—with supporting cases—only that an intended beneficiary was bound by an *arbitration clause* in an agreement, not that a non-signatory is bound by the *entire agreement*. 2019 U.S. Dist. LEXIS 118953, at *12 (D. Ariz. July 17, 2019).

7

explanation that the special facts doctrine applies. But that doctrine applies only to omitted *facts*, not omitted *opinions*. (Br. 18-19.)

### B. Adaptors Cannot Rewrite the Agreement

Count VI fails because the covenant cannot negate an express provision of an agreement. (Br. 19-21.) The Motion cited numerous cases under *Moran v. Erk*, 11 N.Y.3d 452 (N.Y. 2008), which this Court discussed and applied in *Silony Med. Int'l, AG v. SWK Funding LLC*, 2024 U.S. Dist. LEXIS 29094 (S.D.N.Y. Feb. 20, 2024) (Torres, J.). Tellingly, Adaptors largely ignore *Silony*. But as this Court explained, the covenant can limit a contract's broad grant of discretion to one party *only* when doing so "(1) does not negate the contract's express language *and* (2) is necessary to secure the fruits of the contract." *Silony*, 2024 U.S. Dist. LEXIS 29094 at *7. Failure to meet *either* prong is fatal. Adaptors focus solely on the second prong but disregard the first, which forecloses their claim.

Adaptors cite *S. Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497 (S.D.N.Y. 2021), but in *Silony*, this Court specifically discussed and distinguished that case because it turned on the fact that the plaintiff bargained for an "application process" for licensing requests. 2024 U.S. Dist. LEXIS 29094 at *7-8 (citing *S. Telecom*, 520 F. Supp. 3d at 511). The covenant required the defendant "at least…examine the content of the application" to avoid depriving the plaintiff of the "fruits of the contract." *Id.* However, "the covenant did not require the defendant to approve the applications, as such a requirement would conflict with the broad discretion afforded by the contract."

Adaptors did not bargain for an application process. "Unlike the contract in *Southern Telecom*, the [2017] Agreement sets forth no criteria or process by which [Scholastic] will evaluate" licensing requests "and, therefore, does not limit [Scholastic's] discretion" at all. *Id.*

8

### C. Adaptors Cannot Void the Agreement

The parties agree that subsequent performance cures lack of mutuality of consideration. (Br. 22-23; Opp. 22.)  Adaptors also do not dispute that Scholastic has, in fact, licensed the Play for years.  Instead, they argue that a hypothetical "future breach is still possible."  But a declaratory judgment claim must be dismissed if it seeks "an opinion advising what the law would be upon a hypothetical state of facts."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007); *see also Tesler v. Cacace*, 607 F. App'x 87, 89 (2d Cir. 2015) (declaratory judgment claim must be dismissed if based on an injury that is "merely speculative and may never occur.").  For this reason, Count X fails.

Count X separately fails because the Agreement was supported by consideration, including Scholastic's promise to negotiate in good faith Adaptors' right to produce and sell a cast album and sheet music.  Contrary to Adaptors' contention, an "agreement to agree" has "binding force" if the parties "accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement."  *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 2018 U.S. Dist. LEXIS 114576, at *26 (S.D.N.Y. June 28, 2018) (vacated on other grounds).  Scholastic adhered to its commitment and negotiated the Addendum.  Consideration was mutual.

Count X is also subject to a six-year SOL.  Adaptors' citation to *Riverside Syndicate, Inc. v Munroe*, 10 N.Y.3d 18 (2008), ignores that *Kassab v. Kasab*, 137 A.D.3d 1135, 1138 (2d Dep't 2016), cited to and distinguished *Riverside,* holding that an action seeking a declaration that a contract is void is subject to a six-year SOL.  Count X is time-barred.

## IV. THE MISREPRESENTATION CLAIMS FAIL

The FAC is devoid of allegations regarding motive, which fatally undermines scienter.  (Br.

9

24-26.)[6] Adaptors do not even respond to this point. And although they could plead scienter by alleging conscious misbehavior, such allegations "must be correspondingly greater" to survive dismissal. *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001); *see id.* at 143 (where plaintiff "fail[s] to demonstrate" a "motive to defraud," "he must produce a stronger inference of recklessness."). Conscious misbehavior requires an "extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Id.* Thus, to survive dismissal, the FAC must produce a "strong inference" that Scholastic acted with at least constructive knowledge that its statements would induce Adaptors to spend more than the $50,000 in Cast Album expenses that Scholastic had agreed to reimburse.

Adaptors fail to plead *any* allegations of conscious misbehavior, let alone a strong inference of it. They cite only Paragraphs 57 and 59 of the FAC to support conscious misbehavior, but those paragraphs concern *Adaptors'* purported reliance—not *Scholastic's* scienter: ¶57 concerns Adaptors "firmly believ[ing]" their investment in the Cast Album would pay off, and ¶59 says that Adaptors "naively relied on SEI's statements." Nothing in those paragraphs—or anywhere else—produces a strong inference of recklessness.

Adaptors also fail to plead reasonable reliance. *First*, after the alleged misstatements and *before* Adaptors spent money on the Cast Album, they agreed to a $50,000 cap on expenses. Adaptors do not respond to this point. *Second*, the only pre-2018 communications about Sony concerned royalties. Adaptors concede that Scholastic never "communicate[d] that Sony held any

---

[6] A negligent misrepresentation claim is subject Rule 9(b)'s heightened scienter requirements where, as here, it is "based on the same set of facts as those upon which a fraud claim is grounded." *Phx. Cos. v. Concentrix Ins. Admin. Sols. Corp.*, 554 F. Supp. 3d 568, 599 (S.D.N.Y. 2021) (collecting cases).

10

rights restricting the Play's reach" before 2018. (Opp. 24.) Thus, Adaptors cannot have reasonably inferred *anything* about first- or second-class rights from the 2018 statement that "Sony is no longer a party" to the Play. *Third*, the alleged misrepresentation is negated by the Agreement's no-obligation-to-exploit provision—a question of law properly determined on a motion to dismiss. Adaptors say they reasonably believed that Broadway opportunities were available because the Agreement did not specifically mention any encumbrance on such rights. (Opp. 23-24.) This defies common sense. It was unreasonable to believe that Scholastic would take the Play to Broadway when the Agreement says Scholastic has no obligation to exploit the Play *at all*.

The negligent misrepresentation claim also fails to allege a special relationship, which must exist *before* the relevant transaction, not as a result of it. (Br. 26.) Adaptors completely ignore this requirement. Moreover, it's unsurprising that neither party found cases addressing Adaptors' novel theory that a special relationship arises when two arm's length parties utilize a dual agent. The Court should decline Adaptors' invitation to break new legal ground.

Finally, both misrepresentation claims are untimely. Adaptors say the claims are timely because they spent no money on the Cast Album until 2019, but their support is Ex. O of the FAC—a pre-motion letter Adaptors wrote *before* amending their Complaint. (Opp. 23.) Adaptors' decision not to include this allegation in the FAC confirms it is unsupported.

## V. **COUNT IX FAILS**

There is no fiduciary relationship between the parties. Adaptors cite only to outlier cases with "peculiar facts":

- *Licette Music Corp. v. A.A. Records, Inc.*: a fiduciary relationship based on "earlier business dealings," where the defendant's conduct violated duties "independent of [its] contractual duties." 601 N.Y.S.2d 297 (1st Dep't 1993).

- *Universal-MCA Music Publ. v. Bad Boy Entm't*: a co-author also owned the record

11

company that controlled royalties. 2003 NY Slip Op 51037(U), ¶ 11 (Sup. Ct., N.Y. Cty.).

- *Swan*: a defendant's owner also served as the songwriter's "personal attorney." 2000 U.S. Dist. LEXIS 15085, at *15.

No such "peculiar facts" are present here, and there is no precedent for finding a fiduciary relationship under the circumstances presented here.

## **CONCLUSION**

Scholastic's motion should be granted.

Dated: New York, New York
May 30, 2025

By: */s/ Guy Cohen*
**DAVIS+GILBERT LLP**
Guy Cohen
Jacklyn M. Siegel
William S. Kukin
1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com
jseigel@dglaw.com
wkukin@dglaw.com

*Attorneys for Defendants Scholastic Inc. and Scholastic Entertainment Inc.*

12

## CERTIFICATION OF WORD COUNT

I, Guy Cohen, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that this Memorandum of Law complies with the word count limit set forth in Section III(D) of the Court's Individual Practices in Civil Cases and Local Civil Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, because it contains 3,496 words, excluding the parts exempted by Section III(D) of the Court's Individual Practices in Civil Cases and Local Civil Rule 7.1(c). In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Memorandum.

Dated: New York, New York
      May 30, 2025

By: */s/ Guy Cohen*
**DAVIS+GILBERT LLP**
Guy Cohen
Jacklyn M. Siegel
William S. Kukin
1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com
jseigel@dglaw.com
wkukin@dglaw.com

*Attorneys for Defendants Scholastic Inc. and Scholastic Entertainment Inc.*