# EXHIBIT A

| | |
|---|---|
| **From:** | Kukin, William S. |
| **Sent:** | Tuesday, January 13, 2026 2:04 PM |
| **To:** | 'Gili Karev'; 'Maya Katalan' |
| **Cc:** | Cohen, Guy; 'Lance Koonce' |
| **Subject:** | RE: Abosch v. Scholastic |

Gili,

Scholastic agrees to provide 30(b)(6) testimony on the following topics:

- The initial 2015/2016 communications between Scholastic and Sony/Columbia regarding the Existing Play;
- The 2021 and 2024 amendments to the Sony agreement with respect to the Existing Play carveout;
- Scholastic's understanding of Sony's rights in the cast album, the Play, and any and all components thereof;
- Scholastic's knowledge of the 2016 Commissioning Agreement;
- Scholastic's understanding of Susan Gurman's role in connection with the 2016 Commissioning Agreement; and
- The factual circumstances surrounding the 2017 Agreement.

Best,
Will

**William S. Kukin**
(he/him/his)

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

**From:** Kukin, William S.
**Sent:** Tuesday, January 13, 2026 11:39 AM
**To:** 'Gili Karev' <gili.karev@klarislaw.com>; Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>; Lance Koonce <lance.koonce@klarislaw.com>
**Subject:** RE: Abosch v. Scholastic

We are scheduled to speak with our client at 1pm and will provide a response as soon as practicable thereafter.  Can you please clarify what you mean by "filing"?  Per the Court's rules, discovery disputes must be submitted via joint letter.

Best,
Will

**William S. Kukin**
(he/him/his)

1

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

---

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Tuesday, January 13, 2026 11:27 AM
**To:** Kukin, William S. <wkukin@dglaw.com>; Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>; Lance Koonce <lance.koonce@klarislaw.com>
**Subject:** Re: Abosch v. Scholastic

Will,
We've held off on filing pending your response on the below. Can you let us know ASAP your position on points 3 and 5?
Thanks.

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn



---

**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Monday, January 12, 2026 at 9:30 PM
**To:** Gili Karev <gili.karev@klarislaw.com>, Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>, Lance Koonce <lance.koonce@klarislaw.com>
**Subject:** RE: Abosch v. Scholastic

Gili,

As I said to you on our call a few hours ago, the record of what we discussed and agreed to speaks for itself, including in the trailing emails below.  In any event, we will need to confer with our client regarding points 3 and 5 below.  We will get back to you in the morning.

Best,
Will

**William S. Kukin**
(he/him/his)

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

---

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Monday, January 12, 2026 7:55 PM
**To:** Kukin, William S. <wkukin@dglaw.com>; Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>; Lance Koonce <lance.koonce@klarislaw.com>
**Subject:** Re: Abosch v. Scholastic

Will,

Thanks for the call earlier. Clearly we have different recollections of our call last week and subsequent agreements to limit the topics. On review, I actually think we're quite close on these topics and can potentially avoid burdening the court on them, so in an effort to close the gap, here's what we're willing to agree to:

- The initial 2015/2016 communications between Scholastic and Sony/Columbia regarding the Existing Play;
- The 2021 and 2024 amendments to the Sony agreement with respect to the Existing Play carveout
- Scholastic's understanding of Sony's rights in the cast album, the Play, and any and all components thereof. **Will — this is crucial for us. The cast album is but one component of the Play. Scholastic's understanding of Sony's rights in the cast album flow directly from and are contingent on its understanding of Sony's rights in and to the other components of the Play. Please confirm you will provide testimony on this topic.**
- Scholastic's knowledge of the 2016 Commissioning Agreement
- Susan Gurman's role in connection with the 2016 Commissioning Agreement. **Will — this is only slightly broader than your phrasing of whether Scholastic "authorized" Gurman to negotiate any terms. We need to understand what Scholastic believed Gurman's role was in connection with that agreement, and, by extension, the original production of the Play.**
- The factual circumstances surrounding the 2017 Agreement.

Only bullet-points 3 and 5 appear to be in issue. Please let me know your position on these as soon as possible as we intend to file in the coming hour or two.

Best,


Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn




---

**From:** Gili Karev <gili.karev@klarislaw.com>
**Date:** Monday, January 12, 2026 at 4:39 PM

**To:** Kukin, William S. <wkukin@dglaw.com>, Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>, Lance Koonce <lance.koonce@klarislaw.com>
**Subject:** Re: Abosch v. Scholastic

Hi Will,

Unfortunately it appears we are at an impasse. We have made all possible efforts to meet you halfway by significantly limited our original list of topics, but as Scholastic insists on continuing to take an unreasonably narrow position, we will be raising this with the Court.

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn

 

---

**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Monday, January 12, 2026 at 2:49 PM
**To:** Gili Karev <gili.karev@klarislaw.com>, Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>, Lance Koonce <lance.koonce@klarislaw.com>
**Subject:** RE: Abosch v. Scholastic

Gili,

I'd like to be clear on the specific topics for which Scholastic has agreed to provide 30(b)(6) testimony, which are not accurately conveyed in your email.  Consistent with what we have discussed by phone, Zoom and email, and in an effort to resolve Scholastic's objections, we agree to provide 30(b)(6) testimony on the following topics:

- The initial 2015/2016 communications between Scholastic and Sony/Columbia regarding the Existing Play;
- The 2021 and 2024 amendments to the Sony agreement with respect to the Existing Play carveout;
- Scholastic's understanding of Sony's rights in the cast album;
- Scholastic's knowledge of the 2016 Commissioning Agreement;
- Whether Scholastic authorized Susan Gurman to negotiate any terms of the 2016 Commissioning Agreement on Scholastic's behalf; and
- The factual circumstances surrounding the 2017 Agreement.

Scholastic hereby designates the following testimony from Lynne Karppi as its testimony pursuant to Fed. R. Civ. P. 30(b)(6) regarding the topic of Scholastic's ownership of the Play:

- "Scholastic wholly owns the rights to Goosebumps the Musical, and the brand and the property."  (Karppi Tr. 6:11–13.)

- "This [the 2017 agreement] is basically stating Scholastic's ownership of Goosebumps, the play, the Goosebumps Phantom of the Auditorium." (*Id.* at 32:24–33:2.)

- "Q: How would you describe – can you please describe Scholastic's ownership of Goosebumps, if any?
  A:  We are the brand owner.
  Q: What do you understand that to mean, the brand owner?
  A: We solely control the rights to the property and the brand.
  * * *
  Q: Okay.  So when you say that Scholastic controls the rights to the property, what do you understand that to mean?
  A: We own the rights to the book series, the book art, all the brand materials, all the underlying rights. We're the sole brand owner."

  (*Id.* at 14:22–25.)

Scholastic continues to object to additional testimony regarding ownership and work-for-hire on multiple grounds.  Despite numerous opportunities to do so, you have not identified any inconsistencies or gaps in the record on these topics.  You have stated only that you seek Scholastic's "interpretation" of these provisions.  In other words, you intend to ask the 30(b)(6) witness to read the 2017 Agreement and "interpret" the relevant ownership and work-for-hire provisions.  That is plainly improper.  A 30(b)(6) witness's "individual[ ] interpretation of the contract based on his reading of it" is a legal conclusion that is not binding on the corporation*.  MVP Health Plan, Inc. v. Optuminsight, Inc.*, 2016 U.S. Dist. LEXIS 189263, at *32 (N.D.N.Y. Sep. 30, 2016) (citing *AstenJohnson, Inc. v. Columbia Cas. Co.*, 562 F.3d 213, 229 n.9 (3d Cir. 2009)); *see also id.* ("A 30(b)(6) witness's legal conclusions are not binding on the party who designated him.") (quoting *S. Wine & Spirits of Am., Inc. v. Div. of Alcohol & Tobacco Control*, 731 F.3d 799, 811 (8th Cir. 2013)).

It is similarly improper to seek testimony regarding the "interpretation" or "enforceability" of the work-for-hire provisions of the 2017 Agreement.  In any event, you have already received testimony regarding work-for-hire from Gary Hymowitz.  (*See, e.g.*, Hymowitz Tr. 59:23–61:9.)

In addition, as we have already noted multiple times, you have deposed every relevant witness at Scholastic who is not a lawyer; the only additional sources of information on these topics are Scholastic's in-house and/or outside counsel.  It is improper to seek testimony regarding Scholastic's counsel's "understanding" or "interpretation" of contractual terms.

Plaintiffs are plainly engaged in a fishing expedition designed to harass Scholastic.  Scholastic objects to additional testimony regarding the ownership and work-for-hire provisions of the 2017 Agreement on the grounds that such topics: improperly call for legal conclusions and seek information that is privileged; are unreasonable are vague and ambiguous to the extent Plaintiffs have not specified the information sought with reasonable particularity; and are cumulative and duplicative of prior deposition testimony.

Best,
Will

**William S. Kukin**
(he/him/his)

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**

5

1675 Broadway, New York, NY 10019
dglaw.com

---

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Monday, January 12, 2026 11:02 AM
**To:** Kukin, William S. <wkukin@dglaw.com>; Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>; Lance Koonce <lance.koonce@klarislaw.com>
**Subject:** Re: Abosch v. Scholastic

Will,

Thank you for agreeing to provide 30(b)(6) testimony on the following topics:

- Communications between Scholastic and Sony/Columbia regarding the Existing Play (including the initial 2015/2016 communications)
- The 2021 and 2024 amendments to the Sony agreement with respect to the Existing Play carveout
- Scholastic's understanding of Sony's rights in the cast album, the Play, and any and all components thereof
- Scholastic's knowledge of the 2016 Commissioning Agreement
- Susan Gurman's role in connection with the 2016 Commissioning Agreement
- The circumstances surrounding the 2017 Agreement

We disagree with your position that asking SEI's corporate witness about its understanding of certain contractual provisions somehow calls for legal conclusions or seeks to invade Scholastic's privilege. A 30(b)(6) witness can and must testify about the corporation's interpretation and understanding of its contracts. These are business positions, not legal opinions. If specific questions invade attorney-client privilege you have every right to object at the deposition. We can then address those objections in real time or with the Magistrate Judge if necessary. But you cannot blanket-refuse an entire topic by claiming everything in that topic is privileged or calls for legal conclusions. If you wish to bind Scholastic to prior fact witness testimony as the corporation's official 30(b)(6) position on any of these topics, confirm that in writing. Otherwise, we're entitled to a properly prepared corporate representative that can speak to Scholastic's understanding of the ownership and work-for-hire provisions of the 2016 agreement between Scholastic and the commissioning theaters and the 2017 Agreement between Scholastic and Adaptors.

If you disagree with our right to examine these topics or refuse to produce a witness prepared to testify on them, let us know immediately that we are at an impasse so we can raise this with the Court today.

Best,

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn

 

---

**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Friday, January 9, 2026 at 4:54 PM
**To:** Gili Karev <gili.karev@klarislaw.com>, Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>
**Subject:** RE: Abosch v. Scholastic

Gili,

I think we are close to an agreement on many of the issues below, but there are still some items that we need to address.

First, we can confirm that Scholastic will agree to provide 30(b)(6) testimony regarding (a) the initial 2015/2016 communications between Scholastic and Sony/Columbia regarding the Existing Play; (b) the 2021 and 2024 amendments to the Sony agreement with respect to the Existing Play carveout; and (c) Scholastic's understanding of Sony's rights in the cast album.

Second, respectfully, you haven't addressed our objections to areas of testimony that call for legal conclusions and seek to invade Scholastic's privilege.  You asked for 30(b)(6) testimony regarding Scholastic's understanding of the ownership and work-for-hire provisions of the 2016 agreement between Scholastic and the commissioning theaters and the 2017 Agreement between Scholastic and Adaptors.  While we appreciate that you have narrowed the topics from the original deposition notice, we explained that you have already received deposition testimony regarding ownership and work-for-hire.  You haven't identified any inconsistent testimony or any gaps in the record.  Instead, you've now apparently broadened your request and are asking for a 30(b)(6) witness for the express purpose of "walk[ing] through the relevant contracts" and asking for "Scholastic's position as to why it included certain provisions in these agreements," "what Scholastic intended to achieve through those provisions" and "what these provisions were meant to accomplish."  Aside from being irredeemably vague—to which Scholastic continues to object—these topics expressly call for legal conclusions about the meaning of contractual terms.  Moreover, questions about what Scholastic "intended to achieve" through contractual provisions necessarily call for testimony that would invade the attorney-client privilege.  You have already received testimony from all of the relevant non-lawyer witnesses at Scholastic.  The only additional sources of information are Scholastic's in-house counsel.

Scholastic does not dispute that Plaintiffs are entitled to testimony regarding the <u>factual circumstances</u> of the relevant contracts.  But Plaintiffs plainly seek testimony about the <u>meaning</u> of contractual terms and Scholastic's <u>reasons for including</u> contractual terms.  Scholastic will not agree to provide any witness on such topics.

Thus, as a compromise, we will agree to provide a 30(b)(6) witness regarding whether Scholastic knew about the 2016 Commissioning Agreement, whether Scholastic authorized Susan Gurman to negotiate any terms of the 2016 Commissioning Agreement on Scholastic's behalf, and the <u>factual circumstances</u> surrounding the 2017 Agreement.  Even though we continue to believe such testimony would be cumulative and duplicative of Mr. Hymowitz's testimony, we think this is a fair compromise.  To be clear, for the reasons stated above, Scholastic is not agreeing to provide 30(b)(6) testimony regarding "what Scholastic as a corporation understood [the 2017 Agreement] to accomplish."

Best,
Will

**William S. Kukin**
(he/him/his)

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

7

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Friday, January 9, 2026 4:22 PM
**To:** Kukin, William S. <wkukin@dglaw.com>; Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>
**Subject:** Re: Abosch v. Scholastic

Hi Will,
I saw you called earlier but I've been tied up all afternoon, and will unfortunately remain so until I need to switch into family duty later this evening. Given the looming deadline, I wanted to at least try and move this forward via email and to make sure we get this deposition in the schedule for next week. Can you let me know Scholastic's position as soon as you can? We're trying to schedule with Sony concurrently so there are a couple moving parts here.
Thanks,

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn

 

**From:** Gili Karev <gili.karev@klarislaw.com>
**Date:** Thursday, January 8, 2026 at 6:30 PM
**To:** Kukin, William S. <wkukin@dglaw.com>, Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>
**Subject:** Re: Abosch v. Scholastic

Hi Will,

Thanks for this, and for our productive call yesterday. As you'll see below, we've significantly narrowed our requests to only those that are truly essential to understanding the core disputes in this case. We hope you see this in the spirit in which it is intended, which is to genuinely keep the topics as reasonable and appropriately limited as we can while ensuring we can fill key gaps in the existing testimony.

Please let us know as soon as you can when we can expect to schedule this deposition next week.

Best,

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn

 

---

**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Wednesday, January 7, 2026 at 2:51 PM
**To:** Gili Karev <gili.karev@klarislaw.com>, Maya Katalan <maya.katalan@klarislaw.com>
**Cc:** Cohen, Guy <GCohen@dglaw.com>
**Subject:** RE: Abosch v. Scholastic

Gili,

I'm writing to memorialize and follow up on our meet and confer this morning regarding your revised list of potential 30(b)(6) deposition topics:

1. <u>Ownership rights in the Play components</u>.  You agreed to withdraw your request for testimony regarding the "legal basis" of Scholastic's ownership of the Play.  With respect to Scholastic's factual understanding of its ownership, you stated that you've received inconsistent testimony.  We disagree.  Scholastic's witnesses consistently testified that Scholastic owns all rights.  For example, we direct you to Lynne Karppi's testimony that: "Scholastic wholly owns the rights to Goosebumps the Musical, and the brand and the property"; "We own the rights to the book series, the book art, all the brand materials, all the underlying rights. We're the sole brand owner"; and "This [the 2017 agreement] is basically stating Scholastic's ownership of Goosebumps, the play, the Goosebumps Phantom of the Auditorium." (Karppi Tr. 6:11–13, 14:22–25, 32:24–33:2.)  If needed, Scholastic will designate this testimony as its 30(b)(6) testimony on the topic of Scholastic's ownership.  Anything beyond this testimony improperly calls for legal conclusions and/or seeks to invade Scholastic's attorney-client privilege.

   We agreed to withdraw our request for testimony regarding the "legal basis" of Scholastic's ownership but respectfully disagree that what we're asking for regarding Scholastic's factual understanding calls for legal conclusions or invades privilege. We're not asking for legal opinions about the validity of Scholastic's ownership claims. But we need to be able to walk through the relevant contracts with a 30(b)(6) witness and understand Scholastic's position as to why it included certain provisions in these agreements and what it understands those provisions to mean.  Please confirm you will provide a witness on this topic.

2. <u>Work for hire provisions</u>. As discussed, this topic is objectionable on the grounds that it calls for legal conclusions and seeks to invade Scholastic's attorney-client privilege.  Additionally, Scholastic's witnesses testified consistently about the inclusion of work-for-hire provisions in the

commissioning agreements.  (*See, e.g.*, Hymowitz Tr. 60:11–19 ("[A]nything that gets commissioned by the licensee should be done on a work-for-hire basis because SEI always controls all rights and retains all rights. . . . [I]t was standard terms in all of our agreements that anything that, you know, gets done under this agreement should be done on a work-for-hire.").)  Anything beyond this testimony improperly calls for legal conclusions and/or seeks to invade Scholastic's privilege.

For the same reasons, we disagree that this topic improperly calls for legal conclusions or invades privilege. We need to understand why Scholastic included work-for-hire language in its agreements, what Scholastic intended to achieve through those provisions, and what Scholastic's  understanding was about the rights being granted or retained. Mr. Hymowitz's testimony that work-for-hire was "standard" doesn't answer these questions. We're entitled to understand Scholastic's

3.  corporate position on what these provisions were meant to accomplish.

3.  <u>The 2016 Commissioning Agreement and relationship to the 2017 Agreement</u>.  You stated that Susan Gurman's testimony regarding whether Scholastic reviewed and/or was aware of the 2016 commissioning agreement between the theaters and the Adaptors (the "2016 Commissioning Agreement") is inconsistent with Scholastic's witnesses' testimony.  We disagree.  Ms. Gurman testified that Scholastic "never saw the contract." (Gurman Tr. 168:3.)  In addition, as discussed, Susan Gurman is a third party, and Scholastic's witness testified that Scholastic did not see or review the 2016 Commissioning Agreement before it was executed. Specifically, Gary Hymowitz testified that he first became aware of the 2016 Commissioning Agreement in March 2017 when Susan Gurman emailed it to him, he had no understanding of the terms of that agreement, and he was not aware that that agreement purported to grant rights to Adaptors.  (*See* Hymowitz Tr. 67–68.)  Additionally, Mr. Hymowitz testified that any rights granted in the 2016 Commissioning Agreement were between the theaters and Adaptors, and did not implicate Scholastic.  (*See id.* at 69:11–15 ("[I]n the agreements, everything should be done as a work-for-hire.  So any rights that are granted outside of that between the licensee and their work-for-hire is between them.").)  If needed, Scholastic will designate this testimony as its 30(b)(6) testimony on the topic of Scholastic's review and/or awareness of the 2016 Commissioning Agreement.  You also stated that Plaintiffs need testimony regarding why the 2017 Agreement was "necessary."  Scholastic objects to the characterization of the 2017 Agreement as "necessary."  As to why Scholastic agreed to enter into the 2017 Agreement, Mr. Hymowitz testified: "I recall Susan asking for this agreement on behalf of her clients . . . the adaptors."  (*Id.* at 89:21–24.)

4.  The fact that Gary hadn't seen the contract until 2017 doesn't mean that no one from Scholastic was aware of the terms. The 2016 Commissioning Agreement contained provisions that directly impacted Scholastic's rights, and we need a corporate witness to speak to what Scholastic knew or didn't know about those provisions and whether it authorized Susan to negotiate those terms on its behalf. We also need testimony on the initiation of the 2017 Agreement beyond Mr. Hymowitz's recollection that "Susan ask[ed] for it." We need to understand the circumstances that led to the 2017 Agreement, what prompted it, and what Scholastic as a corporation understood it to accomplish.

4.  <u>Sony agreement terms and the "Existing Play" carveout</u>.  You agreed to limit this topic to: (a) pre-2018 communications between Scholastic and Sony/Columbia regarding the Existing Play, and (b) the 2021 and 2024 amendments to the Sony agreement with respect to the Existing Play carveout.  We are discussing with our client and will get back to you.

5.  <u>Geographic licensing restrictions</u>.  You agreed to withdraw your request for 30(b)(6) testimony regarding this topic.

Confirmed - we've withdrawn this topic.

6.  <u>Theatrical rights agency proposals and representations to Adaptors</u>.  As discussed, Scholastic continues to object on the grounds that the vast majority of the sub-topics listed within this request were not included in Plaintiffs' original 30(b)(6) deposition notice.  Additionally, you have not identified any inconsistent testimony regarding the theatrical rights agency proposals.  To the contrary, for example,

Anthony Kosiewska testified that Scholastic declined proposals from theatrical rights agencies because "Scholastic wants a tighter control of how the musical is placed" and "to make sure that it is produced to how it's supposed to be produced, and that we understand who the community theater or the school is . . . to make sure that it is suitable for a young audience." (Kosiewska Tr. 113:10–25.)

We agree to withdraw this topic entirely.

7. <u>Pit Orchestrations</u>.  You agreed to withdraw your request for 30(b)(6) testimony regarding this topic.

We agree to withdraw this topic entirely.

8. <u>Cast album rights, negotiations, and relationship to Sony agreement</u>.  You agreed to limit this topic to Scholastic's understanding of Sony's rights in the cast album.  We are discussing with our client and will get back to you.

9. <u>Susan Gurman's dual representation and potential conflicts</u>.  Scholastic's witnesses have testified consistently about this topic and we do not believe there are any gaps in the record.  You said that you would review and get back to us regarding potentially withdrawing your request for 30(b)(6) testimony regarding this topic.

We agree to withdraw this topic.

10. <u>Royalty calculation and payment practices</u>.  Scholastic's witnesses have testified consistently about this topic and we do not believe there are any gaps in the record.  You said that you would review and get back to us regarding potentially withdrawing your request for 30(b)(6) testimony regarding this topic.

We agree to withdraw this topic.

Best,
Will

**William S. Kukin**
(he/him/his)

---

wkukin@dglaw.com
d   212 468 4810

---

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

---

**From:** Kukin, William S.
**Sent:** Tuesday, January 6, 2026 5:09 PM
**To:** 'Gili Karev' <gili.karev@klarislaw.com>; Maya Katalan <maya.katalan@klarislaw.com>
**Subject:** RE: Abosch v. Scholastic

Hi Gili,

At this point I think it would be most efficient for us to talk through everything live.

Best,
Will

**William S. Kukin**
(he/him/his)

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Tuesday, January 6, 2026 2:58 PM
**To:** Maya Katalan <maya.katalan@klarislaw.com>; Kukin, William S. <wkukin@dglaw.com>
**Subject:** Re: Abosch v. Scholastic

Hi Will,
It'd be helpful to get your thoughts on the below before our m&c tomorrow morning so we can use our time efficiently.
Thanks,

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn



**From:** Maya Katalan <maya.katalan@klarislaw.com>
**Date:** Monday, December 29, 2025 at 8:23 PM
**To:** Kukin, William S. <wkukin@dglaw.com>
**Cc:** Gili Karev <gili.karev@klarislaw.com>
**Subject:** Re: Abosch v. Scholastic
Dear Will,

Following our review of the deposition transcripts and Scholastic's responses to Plaintiffs' initial Notice of Deposition Pursuant to Fed. R. Civ. P. 30(b)(6), we write to summarize the topics that we intend to

pursue via 30(b)(6) testimony. Contrary to Scholastic's objections, testimony from a properly designated Scholastic corporate representative is necessary to address significant evidentiary gaps in the record to date. Plaintiffs have endeavored to refine and clarify the originally propounded 30(b)(6) topics as follows:

1. **Ownership Rights in the Play Components:** Scholastic's understanding of its ownership rights in each component of the Play — including the script, libretto, lyrics, musical compositions, arrangements, orchestrations, orchestral tracks, and sheet music — and the factual and legal basis for Scholastic's claimed ownership for such components.

2. **Work-for-Hire Provisions and Assignment Language:** Scholastic's understanding of the enforceability of work-for-hire provisions for theatrical works under copyright law, the decision to include such provisions in the commissioning agreements, Scholastic's knowledge that assignment language was struck from the final agreements, and the legal effect of such omissions on ownership rights.

3. **The 2016 Commissioning Agreement and Relationship to 2017 "Side Agreement":** Whether Scholastic reviewed and/or was aware of the 2016 commissioning agreement between the adaptors and the theaters, which contained provisions granting licensing rights to the adaptors. Specifically, 30(b)(6) testimony is needed as to Scholastic's awareness of the 2016 commissioning agreement, its review and understanding of provisions granting rights to adaptors, the relationship between the 2016 agreement and the 2017 "side agreement," and why a separate agreement was necessary if Scholastic believed it owned all rights.

4. **Sony Agreement Terms and "Existing Play" Carve-Out:** Scholastic's specific agreements with Sony and/or Columbia relating to stage play rights for Goosebumps properties, the scope of the "existing play" carve-out, what theatrical rights Sony retained versus what rights Scholastic reserved, whether Sony's approval was required for the TYA musical, and any communications between Scholastic and Sony regarding the Play.

5. **Geographic Licensing Restrictions:** Scholastic's policies and decision-making process for geographic limitations on licensing the Play, including the factual basis for limiting licenses to the United States and Canada, who made this decision, when it was made, and what business considerations supported it.

6. **Theatrical Rights Agency Proposals and Representations to Adaptors:** Scholastic's consideration of proposals from theatrical rights agencies (TRW and MTI), the decision-making process regarding these proposals, the reasons for not entering into agreements with such agencies, any representations made to the adaptors regarding engagement of these agencies, and Scholastic's typical practices for granting territorial and temporal rights to licensing agents.

7. **Pit Orchestrations:** The creation of pit orchestrations for the Play, who commissioned and paid for their creation, Scholastic's understanding of ownership rights in the orchestrations, Scholastic's knowledge of requests for pit orchestrations, whether Scholastic investigated making pit orchestrations available, and the impact of their unavailability on licensing revenue.

8. **Cast Album Rights, Negotiations, and Relationship to Sony Agreement:** Cast album addendum negotiations, including why it was handled separately from the 2017 agreement, reasons for the delay in finalizing the addendum, Scholastic's understanding of Sony's rights in cast album recordings, any representations made to adaptors about cast album rights, and the decision-making process regarding cast album terms.

9. **Susan Gurman's Dual Representation and Potential Conflicts:** Scholastic's understanding of Susan Gurman's dual representation, whether Scholastic understood that Gurman was representing the adaptors' interests in the contract negotiations, any discussions about potential

conflicts of interest, whether Scholastic believed the adaptors had independent legal representation, and Scholastic's policies regarding conflicts of interest in contract negotiations.

10. **Royalty Calculation and Payment Practices**: Scholastic's policies and practices for calculating and distributing royalty payments to the adaptors, the decision-making process that led to payment errors, Scholastic's understanding of its obligations to share licensing revenue with Sony, and how Scholastic determined what amounts to pay to the adaptors versus retain for itself.

These topics address critical gaps in the record that emerged during fact depositions, which are directly relevant to the claims in the Complaint. These depositions revealed that individual Scholastic witnesses lacked knowledge of the fundamental aspects of the agreements, ownership rights, and licensing decisions that are central to the parties' dispute. Scholastic's 30(b)(6) testimony is thus necessary to resolve these gaps.

We look forward to discussing further during our meet-and-confer tomorrow.

Thank you,
Maya

Maya Katalan
**Associate** | (267) 265-1777




**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Tuesday, December 23, 2025 at 3:44 PM
**To:** Gili Karev <gili.karev@klarislaw.com>
**Subject:** RE: Abosch v. Scholastic

Gili,

As discussed on our call earlier, Defendants requested a meet-and-confer to address our objections to Plaintiffs' 30(b)(6) deposition notice and to narrow the potential topics for examination. You agreed to meet and confer next Tuesday, December 30, at 11:00 am.

You mentioned two specific areas of concern for Plaintiffs: (1) topics where Plaintiffs believe that the individual witnesses' deposition testimony was inconsistent, and (2) topics not addressed at individual witnesses' depositions. To streamline our discussion, please identify these topics in advance of our meeting next Tuesday.

Best,
Will

**William S. Kukin**
(he/him/his)

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Tuesday, December 23, 2025 11:42 AM
**To:** Kukin, William S. <wkukin@dglaw.com>
**Subject:** Re: Abosch v. Scholastic

Ok no prob - will try to catch you before 1:30 but if not, 2:30 works for me.

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn

 

**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Tuesday, December 23, 2025 at 11:40 AM
**To:** Gili Karev <gili.karev@klarislaw.com>
**Subject:** RE: Abosch v. Scholastic
2pm isn't good for me.  I'm available now until 1:30 or after 2:30.

**William S. Kukin**
(he/him/his)

wkukin@dglaw.com
d   212 468 4810

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**

1675 Broadway, New York, NY 10019

dglaw.com

---

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Tuesday, December 23, 2025 11:36 AM
**To:** Kukin, William S. <wkukin@dglaw.com>
**Subject:** Re: Abosch v. Scholastic

Hi Will - I'll give you a call a little later today to discuss. Likely around 2pm. Thanks.

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn

 

---

**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Monday, December 22, 2025 at 3:43 PM
**To:** Gili Karev <gili.karev@klarislaw.com>
**Subject:** RE: Abosch v. Scholastic

I don't think it's going to be a long conversation.  If you have five minutes, give me a call this afternoon.  If not we can talk tomorrow.

**William S. Kukin**
(he/him/his)

---

wkukin@dglaw.com
d   212 468 4810

---

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**

1675 Broadway, New York, NY 10019

dglaw.com

---

**From:** Gili Karev <gili.karev@klarislaw.com>
**Sent:** Monday, December 22, 2025 3:06 PM

**To:** Kukin, William S. <wkukin@dglaw.com>
**Subject:** Re: Abosch v. Scholastic

Hi Will,

Sorry for the delay – today has been back to back. Can we touch base tomorrow 3:00pm instead?

Many thanks,

Gili Karev
**Partner** | (347) 326-2305 | Bio | LinkedIn

 

---

**From:** Kukin, William S. <wkukin@dglaw.com>
**Date:** Monday, December 22, 2025 at 11:51 AM
**To:** Gili Karev <gili.karev@klarislaw.com>
**Subject:** Abosch v. Scholastic
Hi Gili,

Let me know if you have some time to discuss the potential 30(b)(6) deposition.  I'm free this afternoon after 3:30pm.

Best,
Will

**William S. Kukin**
(he/him/his)

---

wkukin@dglaw.com
d   212 468 4810

---

vCard | Bio | LinkedIn | Twitter

**Davis+Gilbert LLP**
1675 Broadway, New York, NY 10019
dglaw.com

---

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify

wkukin@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

---

Think before you click! This email originated outside of Davis+Gilbert.

---

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify wkukin@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

---

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify wkukin@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

---

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify wkukin@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

---

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify wkukin@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

---

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify wkukin@dglaw.com

immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify wkukin@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.

This message contains confidential information and is intended only for gili.karev@klarislaw.com . If you are not gili.karev@klarislaw.com you should not disseminate, distribute or copy this e-mail. Please notify wkukin@dglaw.com immediately by e-mail if you have received this e-mail by mistake and delete this e-mail from your system. E-mail transmission cannot be guaranteed to be secure or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of this message, which arise as a result of e-mail transmission. If verification is required please request a hard-copy version.