UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANOMALOUS PRODUCTIONS, LLC; DANNY
ABOSCH; and JOHN MACLAY,

              Plaintiffs,

      vs.

SCHOLASTIC ENTERTAINMENT INC.; and
SCHOLASTIC INC.,

              Defendants.

Civil Case No. 1:24-cv-08041

Hon. Analisa Torres

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION

**DAVIS+GILBERT LLP**
Guy Cohen
Jacklyn M. Siegel
William S. Kukin
1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com
jseigel@dglaw.com
wkukin@dglaw.com

*Attorneys for Defendants Scholastic Inc. and
Scholastic Entertainment Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ........................................................................................................................ 1

      A.    Scholastic Licenses the Creation of the Play ....................................................... 1

      B.    The Agreement Confirms Scholastic Has No Ongoing Obligation to Exploit the Play ..................................................................................................... 3

      C.    Scholastic Repeatedly Licenses the Play ............................................................ 3

PROCEDURAL HISTORY......................................................................................................... 4

LEGAL STANDARD................................................................................................................. 4

ARGUMENT............................................................................................................................... 5

      I.    THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CANNOT NEGATE AN EXPRESS CONTRACTUAL PROVISION...................... 5

      II.    THE COURT SHOULD NOT DISTURB ITS HOLDING WITH RESPECT TO COUNT X........................................................................................................... 9

CONCLUSION.......................................................................................................................... 11

**Cases**

*A.N.R. Investment Co. Ltd. v. HSBC Private Bank*, 135 A.D.3d 632 (1st Dep't 2016).............. 5, 6

*Aquavit Pharms., Inc v. U-Bio Med, Inc*, 2020 U.S. Dist. LEXIS 28639 (S.D.N.Y. Feb. 19, 2020) ....................................................................................................................................... 11

*Busher v. Barry*, 2021 U.S. App. LEXIS 32561 (2d Cir. Nov. 2, 2021) ..................................... 10

*Cambridge Invs. LLC v. Prophecy Asset Mgt., LP*, 188 A.D.3d 521 (1st Dep't 2020)................. 6

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010).................................................... 2

*Echo Bay Pharms., LLC v. Torrent Pharma, Inc.*, 2022 U.S. Dist. LEXIS 106153 (S.D.N.Y. June 14, 2022)........................................................................................................................... 9

*ELBT Realty, LLC v. Mineola Garden City Co.*, 144 A.D.3d 1083 (2d Dep't 2016).................... 6

*Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127 (2d Cir. 1984) ............................................ 5

*Goureau v. Lemonis*, 2021 U.S. Dist. LEXIS 199321 (S.D.N.Y. Oct. 15, 2021)...................... 5, 6

*Heffernan v. Straub*, 655 F. Supp. 2d 378 (S.D.N.Y. 2009) ........................................................ 4

*Kassab v. Kassab*, 137 A.D.3d 1135 (2d Dep't 2016).................................................................. 10

*Moran v. Erk*, 11 N.Y.3d 459 (2008)................................................................................... 5, 7, 8

*Mullinix v. Mount Sinai Sch. of Med.*, 2015 U.S. Dist. LEXIS 7965 (S.D.N.Y. Jan. 23, 2015)..... 4

*Residential, Inc. v. Sand Canyon Corp.*, 2014 U.S. Dist. LEXIS 133921 (S.D.N.Y. Sep. 17, 2014) ......................................................................................................................................... 4

*Reyes v. City of N.Y.*, 992 F. Supp. 2d 290 (S.D.N.Y. 2014)..................................................... 5, 7

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255 (2d Cir. 1995) .......................................................... 4

*Silony Med. Int'l, AG v. SWK Funding LLC*, 2024 U.S. Dist. LEXIS 29094 (S.D.N.Y. Feb. 20, 2024) ...................................................................................................................................... 9

*Singh v. City of N.Y.*, 40 N.Y.3d 138 (2023).............................................................................. 7, 8

*Southern Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497 (S.D.N.Y. 2021) ....................................................................................................................................... 8, 9

*Spinelli v. NFL*, 903 F.3d 185 (2d Cir. 2018) ............................................................................ 10

*Transit Funding Assoc., LLC v. Capital One Equip. Fin. Corp.*, 149 A.D.3d 23 (1st Dep't 2017) ........................................................................................................... 6, 7

*Vendome v. Oldenburg,* 198 A.D.3d 450 (1st Dep't 2021) .......................................... 5

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................ 1

Scholastic Inc. and Scholastic Entertainment Inc. ("SEI," and together, "Scholastic") submit this brief in support of their motion for partial reconsideration of the Court's March 30, 2026 Order (the "Order," ECF No. 82), only to the extent the Order denied Scholastic's motion to dismiss, in part, Count VI of the First Amended Complaint ("FAC," ECF No. 28) of Danomolous Productions LLC, Danny Abosch, and John Maclay (collectively, "Adaptors") pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

Scholastic seeks partial reconsideration of a narrow issue: the Court's denial of Scholastic's motion to dismiss Adaptors' claim for breach of the implied covenant of good faith and fair dealing. The parties' 2017 contract states that Scholastic "shall have no obligation to exploit the Play." Controlling decisions from the New York Court of Appeals and several intermediate appellate courts in New York dictate that the covenant cannot negate the express terms of a contract. Thus, Adaptors cannot state a claim that Scholastic breached the covenant by failing to exploit the Play.

The Order nevertheless held that Adaptors plausibly allege that Scholastic **has** an implied obligation to exploit the Play. It appears that the Court overlooked controlling law in reaching this conclusion. Scholastic therefore requests that the Court reconsider this portion of the Order and grant Scholastic's motion to dismiss Adaptors' claim for breach of the covenant.

## BACKGROUND

Scholastic incorporates by reference the Background recited in its motion to dismiss opening brief. ("MTD Br.," ECF No. 54 at 3-7.) As relevant here:

### A. Scholastic Licenses the Creation of the Play

Scholastic owns *Goosebumps,* the beloved children's horror stories. (FAC ¶ 20.) Under Scholastic's stewardship, the *Goosebumps* brand has expanded to include two feature films, a

video game series, and a television series.  (*See id.*)  In 2016, shortly after release of the first

*Goosebumps* movie, SEI authorized two theater companies (the "Theaters") to produce the Play

as a theater for young audiences ("TYA") musical.  SEI and the Theaters entered into an agreement

in April 2016 (the "License Agreement").[1]

Because of *Goosebumps*' significant value, Scholastic strictly limited the Theaters' rights.

For example, the License Agreement: (1) required the Play to be "in good taste and suitable for

families and children" in a manner "consistent with the look, feel, tenor and spirit" of the

*Goosebumps* brand; (2) precluded the Theaters from presenting the Play "as a 'first class or second

class production' as said terms are understood in the live stage industry (including but not limited

to Broadway and Off-Broadway theaters, respectively)"; and (3) limited the performance rights to

a specified term and territory.  (License Agreement §§ 1(a), 5(a).)

The parties contemplated that the Theaters would engage Adaptors to create the Play.  (*Id.*

§ 3(d); *see* FAC ¶ 27 ("It is not uncommon for a licensor to contract with a theatrical producer,

instead of with the dramatists directly.").)  Crucially, Scholastic required that neither the Theaters,

nor Adaptors, would retain any ownership of or control over the Play.  (*See* License Agreement

§ 5(b).)  Adaptors would receive 50% of license fees but would have no right to exploit the Play

themselves.  (*See id.* § 3(d).)

In short, Scholastic commissioned the Theaters to create a Play ***only*** on the condition that

Scholastic would own and control the Play and all underlying materials (a common practice for

---

[1] The License Agreement is "incorporated by reference in the complaint" and is "integral" because the FAC "relies heavily upon [its] terms and effect."  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (*See* FAC ¶ 27; FAC Ex. C, ECF No. 28-1 at 11 (discussing the "signed written contract" where "SEI grants and licenses to" the Theaters the "right to adapt" a *Goosebumps* book); FAC Ex. F, ECF No. 28-1 at 39 (Play was commissioned via a "Play License" between SEI and the Theaters).)

owners of valuable media properties). Scholastic did not grant the Theaters the right to create a cast album, sheet music or any derivative work based on *Goosebumps* other than the Play.

**B. The Agreement Confirms Scholastic Has No Ongoing Obligation to Exploit the Play**

Following the Play's initial run, Adaptors sought to contract directly with Scholastic. (FAC ¶ 40.) The parties executed that contract in 2017 (the "Agreement," FAC Ex. F, ECF No. 28-1 at 38). Adaptors agreed that the terms of the Agreement "govern [Adaptors'] rights in the Play in lieu of any rights" the Theaters purported to grant them in 2016. (*Id.* § 2.) Consistent with the License Agreement, Adaptors agreed that "SEI shall be the sole and unlimited owner" of the Play "and of all rights therein throughout the world forever." (*Id.* § 5(a).)

The Agreement confirmed SEI's absolute discretion and control over whether and to what extent to exploit the Play: "SEI shall have no obligation to exploit the Play, it being understood that the only obligation is for SEI to make the payments and provide for credit to be accorded as set forth under this Agreement." (*Id.*) The parties also agreed that "under no circumstances shall Adaptors have the right to license and/or exploit the Play, all such rights remaining in SEI." (*Id.* § 6.)

In addition, Scholastic granted Adaptors several rights they did not previously possess. The parties agreed to negotiate in good faith the terms for Adaptors to produce and sell a cast album and sheet music. (*Id.* § 7.) Scholastic separately committed to use "commercially reasonable efforts" to see that proper credit is accorded to Adaptors in any subsequent exploitation of the Play. (*Id.* § 18.) Scholastic agreed to share any net revenue derived from the exploitation of "any portion" of the Play—such as the Play's music—and to accord credit to Adaptors for any such exploitations. (*Id.* §§ 7, 17.)

**C. Scholastic Repeatedly Licenses the Play**

Over the years, and consistent with its status as a TYA musical, Scholastic has repeatedly

licensed the Play to children's theaters, schools and camps.  (*E.g.*, FAC ¶¶ 2, 47, 62.)

## PROCEDURAL HISTORY

Scholastic previously moved to dismiss eight causes of action in the FAC, including the portion of Count VI alleging breach of the implied covenant of good faith and fair dealing based on Scholastic's alleged failure to exploit the Play.  (ECF No. 49.)  Scholastic argued in both its opening brief and reply brief ("MTD Reply," ECF No. 64) that the claim must be dismissed because the Agreement expressly permits Scholastic to exercise complete discretion over whether to exploit the Play, and under New York law, the covenant cannot negate that express provision. (MTD Br. at 19-21; MTD Reply at 8.)

On March 30, 2026, the Court issued the Order granting in part and denying in part Scholastic's MTD.  With respect to Count VI, the Court held that Adaptors "plausibly alleged that Scholastic has an implied obligation to act in good faith in exploiting the play" and "have thus stated a claim that Scholastic violated the covenant of good faith and fair dealing in connection with its alleged failure to license the Play under the Agreement."  (Order at 15.)

## LEGAL STANDARD

Motions for reconsideration under Local Civil Rule 6.3 are "addressed to the sound discretion of the district court."  *Mullinix v. Mount Sinai Sch. of Med.*, 2015 U.S. Dist. LEXIS 7965, at *4 (S.D.N.Y. Jan. 23, 2015).  Reconsideration should be granted when "the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Homeward Residential, Inc. v. Sand Canyon Corp.*, 2014 U.S. Dist. LEXIS 133921, at *2 (S.D.N.Y. Sep. 17, 2014) (Torres, J.) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).  Courts routinely grant motions for reconsideration on this basis.  *See, e.g.*, *Heffernan v. Straub*, 655 F. Supp. 2d 378, 382 (S.D.N.Y. 2009) (granting motion for reconsideration and dismissing claim

4

based on a "controlling case").

**ARGUMENT**

**I.      THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING CANNOT NEGATE AN EXPRESS CONTRACTUAL PROVISION**

The Agreement provides that "SEI shall have no obligation to exploit the Play." (Agreement § 5(a).) As Scholastic showed in the MTD, under controlling New York case law, the "covenant of good faith and fair dealing cannot negate express provisions of the agreement." (MTD Br. at 20 (quoting *Vendome v. Oldenburg,* 198 A.D.3d 450, 451 (1st Dep't 2021); *see id.* ("The covenant of good faith and fair dealing cannot be construed so broadly as to effectively nullify other express terms of the contract, or to create independent contractual rights.") (quoting *A.N.R. Investment Co. Ltd. v. HSBC Private Bank*, 135 A.D.3d 632, 634 (1st Dep't 2016)). Scholastic further noted that, following the landmark Court of Appeals case, *Moran v. Erk*, 11 N.Y.3d 459 (2008), New York courts "refuse[] to recognize a claim for breach of the implied covenant…where the contract entitles one party to exercise complete and sole discretion." (*Id.* at 20–21 (citing *Goureau v. Lemonis*, 2021 U.S. Dist. LEXIS 199321, at *18-20 (S.D.N.Y. Oct. 15, 2021) (collecting cases)).) Accordingly, Adaptors cannot state a claim for breach of the covenant based on Scholastic's alleged failure to exploit the Play.

The Court's Order appears to have overlooked this controlling New York case law. The Order did not reference the cases cited above: *Vendome*, *A.N.R. Investment Co.*, and *Goureau*. Two of the cases—*Vendome* and *A.N.R. Investment Co.*—were issued by the New York Appellate Division, First Department. "[T]he decision of an intermediate state court on a question of state law is binding" unless the Court finds "persuasive evidence that the highest state court would reach a different conclusion." *Reyes v. City of N.Y.*, 992 F. Supp. 2d 290, 301 (S.D.N.Y. 2014) (Torres, J.) (citing *Entron, Inc. v. Affiliated FM Ins. Co.*, 749 F.2d 127, 132 (2d Cir. 1984)). *Vendome* and

5

*A.N.R. Investment Co.* therefore control the issue of whether the covenant can negate the express provisions of the Agreement: under New York law, it cannot.

Further, although *Goureau* is not itself controlling authority, Scholastic's MTD cited to a portion of the opinion discussing three additional New York Appellate Division cases that have "refused to recognize a claim for breach of the implied covenant…where the contract entitles one party to exercise complete and sole discretion with respect to the complained of actions." (MTD Br. at 20–21 (quoting *Goureau*, 2021 U.S. Dist. LEXIS 199321, at *18-20).) In each of these three cases, a New York intermediate appellate court dismissed a claim for breach of the covenant that would have negated an express provision of the relevant contract. *See Cambridge Invs. LLC v. Prophecy Asset Mgt., LP*, 188 A.D.3d 521, 522 (1st Dep't 2020) ("Defendant cannot breach the covenant of good faith and fair dealing if the contract gives it sole and complete discretion."); *Transit Funding Assoc., LLC v. Capital One Equip. Fin. Corp.*, 149 A.D.3d 23, 29-30 (1st Dep't 2017) (rejecting implied covenant claim where the "complained-of conduct consists entirely of acts [the defendant] was authorized to do by the contract" and thus would have "negate[d] express provisions of the agreement"); *ELBT Realty, LLC v. Mineola Garden City Co.*, 144 A.D.3d 1083, 1084 (2d Dep't 2016) (rejecting implied covenant claim where the contract permitted the defendant to terminate in "its sole discretion."). These decisions further reinforce that, under controlling New York law, the covenant cannot negate the Agreement's express provision that Scholastic has no obligation to exploit the Play.

*Transit Funding* is instructive. There, a loan agreement specifically authorized the lender to deny the borrower's requests for advancing funds for any reason. *Transit Funding*, 149 A.D.3d at 26. The borrower asserted a claim for breach of the implied covenant based on the lender's denial of advances. The lower court denied the lender's motion to dismiss, but the First

6

Department reversed because "the contract terms unambiguously afford [the lender] the right to exercise its absolute discretion to withhold the necessary approval." *Id.* at 29 (citing *Moran*, 11 N.Y.3d 452). The Court noted that, in another provision of the loan agreement dealing with valuation methodologies, the parties "specifically included language" that the lender had to exercise "good faith." *Id.* at 30. In contrast, the provision authorizing the lender to decline any request for an advance "lacks any such limitation requiring [the lender] to act in good faith when doing so." *Id.*

The Agreement follows a similar structure. The parties agreed that Scholastic would use "commercially reasonable efforts" to ensure that Adaptors are accorded credit. (Agreement § 18.) In contrast, the parties included no limitations whatsoever in providing that Scholastic has no obligation to exploit the Play. (*Id.* § 5(a).) Thus, because Scholastic's "complained-of conduct consists entirely of acts it was authorized to do by the contract," Adaptors' covenant claim must be dismissed. *Transit Funding*, 149 A.D.3d at 30.

The Court is bound to follow these First and Second Department cases unless the Court finds "persuasive evidence that the highest state court would reach a different conclusion." *Reyes*, 992 F. Supp. 2d at 301 (Torres, J.). No such evidence exists. In fact, the Court of Appeals recently **_affirmed_** the core holding of *Moran* in recognizing that "the covenant cannot be used to imply obligations inconsistent with other terms of the contractual relationship." *Singh v. City of N.Y.*, 40 N.Y.3d 138, 146 (2023). The dispositive question is whether "a reasonable person in plaintiffs' position would have understood the contract[] to include" a particular implied promise. *Id.* Where the contract contains provisions that are "incompatible with such a promise," an implied covenant claim must be dismissed as a matter of law. *See id.* (dismissing implied covenant claim because the contract included disclaimers that were "incompatible" and "inconsistent with other terms of

7

the contractual relationship"). Here, the Agreement's provision that "SEI shall have no obligation to exploit the Play" (Agreement § 5(a)) is "flatly inconsistent" with any implied promise that SEI will exploit the Play. *Singh*, 40 N.Y.3d at 146.[2] Thus, as a matter of law, a reasonable person in Adaptors' position "cannot justifiably have expected that" Scholastic was "contractually committing" itself to exploit the Play. *Id.* at 147.

The Court's holding that Adaptors plausibly allege Scholastic's "implied obligation to act in good faith in exploiting the play" thus runs directly counter to controlling New York law. (Order at 15.) Such an obligation is negated by—and is flatly inconsistent with—the Agreement's express provisions.

*Southern Telecom Inc. v. ThreeSixty Brands Grp., LLC*, 520 F. Supp. 3d 497 (S.D.N.Y. 2021), which is discussed in the Order, supports **Scholastic's** position, and in any event is not controlling with respect to New York law (in contrast to the Court of Appeals and First and Second Department cases cited above.) *Southern Telecom* discussed how, in limited circumstances, an implied covenant can arise when one party's exercise of discretion under a contract deprives the other party of the "fruits of the contract." But the Court of Appeals has repeatedly cautioned that "the 'fruits of the contract' are only those contemplated by the 'plain language' thereof," *Singh*, 40 N.Y.3d at 146 (quoting *Moran*, 11 N.Y.3d at 456-57), and nothing in *Southern Telecom* suggests that New York's highest court would create an implied covenant to exploit the Play where, as here, the plain language of the contract contemplates *no* obligation for Scholastic to

---

[2] The Agreement also provides that "SEI shall be the sole and unlimited owner [of the Play] and of all rights therein throughout the world forever," "Adaptors…will not have any right of approval or consultation in connection with SEI's exercise of its rights" and "under no circumstances shall Adaptors have the right to license the Play." (Agreement §§ 5(a)-(b), 6.) These provisions are separately "incompatible" with an implied obligation for Scholastic to license the Play. *Singh*, 40 N.Y.3d at 146.

exploit the Play.

Moreover, as Scholastic explained (*see* MTD Reply at 8), *Southern Telecom* is entirely distinguishable because it turned on the fact that the plaintiff specifically bargained for a "prescribed three-stage" application process for licensing requests. *Southern Telecom*, 520 F. Sup. 3d at 510-11. Thus, *Southern Telecom* stands only for the limited proposition that, where parties to a licensing agreement contractually agree to an application process, the implied covenant requires the licensor to examine the content of licensing applications. *Id.* Critically, however, the covenant could not be read to require the licensor to **approve** any applications, because such a requirement would "negate an expressly bargained-for clause." *Id.* Here, in contrast to *Southern Telecom*, the Agreement "sets forth no criteria or process by which [Scholastic] will evaluate" licensing requests, "and, therefore, does not limit [Scholastic's] discretion at all." (MTD Reply at 8 (quoting *Silony Med. Int'l, AG v. SWK Funding LLC*, 2024 U.S. Dist. LEXIS 29094, at *7-8 (S.D.N.Y. Feb. 20, 2024) (Torres, J.).)

Finally, Scholastic notes that, through the Theaters, Adaptors were granted a limited right to use Scholastic's intellectual property to create a Play that was to be—and is—owned by Scholastic. This case does not involve the surrender of an exclusive license, but even if it did, there is "no[]…authority for the proposition that exclusive license agreements are exempt from the well-settled rule that the implied covenant will never impose an obligation which would be inconsistent with the other terms of the contractual relationship." *Echo Bay Pharms., LLC v. Torrent Pharma, Inc.*, 2022 U.S. Dist. LEXIS 106153, at *26 (S.D.N.Y. June 14, 2022).

Adaptors thus cannot state a claim for breach of the covenant.

## II.  THE COURT SHOULD NOT DISTURB ITS HOLDING WITH RESPECT TO COUNT X

Based on the Court's inference of an implied covenant, the Order separately dismissed

Count X, which seeks a declaration that the Agreement is void for lack of consideration. (Order at 16.) To the extent the Court's reconsideration of its ruling regarding Count VI impacts this holding, Scholastic submits that Count X should nevertheless be dismissed for the reasons set forth in the MTD. Count X is time-barred under New York law that an action for a declaratory judgment involving contractual rights is governed by a six-year limitations period. (MTD at 21-22 (citing *Busher v. Barry*, 2021 U.S. App. LEXIS 32561, at \*10-11 (2d Cir. Nov. 2, 2021); *Kassab v. Kassab*, 137 A.D.3d 1135 (2d Dep't 2016) (an action seeking a declaration that a contract is void is subject to a six-year statute of limitations)).) Adaptors' declaratory judgment claim expired in 2023—six years after execution of the Agreement—more than a year before they filed suit.

Separately, the Court need not read an implied covenant into the Agreement to avoid rendering the contract illusory. Scholastic did not grant the Theaters the right to create a cast album, sheet music or any derivative work based on the *Goosebumps* intellectual property other than the Play. Accordingly, the Theaters could not (and did not) authorize Adaptors to create a cast album, sheet music or any derivative work other than the Play. *See Spinelli v. NFL*, 903 F.3d 185, 203 (2d Cir. 2018) ("[I]t is without question that the sublicensor may not convey more than he owns…and if a sublicensor has no right to issue a particular license, the sublicensee cannot acquire rights in copyrighted works simply because the sublicensor did so anyway.").

Thus, far from "reduc[ing]" Adaptors' rights (Order at 15), Scholastic's agreement to negotiate in good faith terms for Adaptors to create and sell a cast album and sheet music was substantial consideration beyond anything to which Adaptors were entitled prior to executing the Agreement.[3] Scholastic's promise had "binding force." (MTD Reply at 9.) And, in fact,

---

[3] The record evidence will show that this provision was critically important to Adaptors. They privately stated to one another that Scholastic's agreement to negotiate terms for the cast album

10

Scholastic adhered to its commitment and negotiated the addendum in 2018, granting Adaptors the right to create and sell a cast album and sheet music. Consideration was thus mutual in the Agreement. (MTD Br. 22; MTD Reply 9.)[4]

Finally, Adaptors also concede that Scholastic has licensed the Play for years and that Adaptors have received royalties. (*E.g.*, FAC ¶¶ 2, 47, 62.)[5] Thus, "any previous lack of mutuality was cured" by Scholastic's subsequent performance. (MTD Br. 22-23 (citing *Aquavit Pharms., Inc v. U-Bio Med, Inc*, 2020 U.S. Dist. LEXIS 28639, at \*7 (S.D.N.Y. Feb. 19, 2020)).)

## **CONCLUSION**

The Court should grant Scholastic's motion for partial reconsideration of the Order and should dismiss, with prejudice, Adaptor's claim for breach of the implied covenant of good faith and fair dealing.

---

and sheet music in good faith was one of the most important issues to them in the Agreement; Adaptors negotiated hard to secure Scholastic's agreement to this provision.

[4] Adaptors also received consideration in the form of Scholastic's agreement to use "commercially reasonable efforts" to accord credit to Adaptors, and to share revenue and accord credit to Adaptors for any exploitation of the Play's music. Each of these provisions was also significant for Adaptors.

[5] The evidence will show that Scholastic has licensed the Play nearly 100 times since the Agreement was executed, resulting in over $111,000 in royalties to Adaptors.

Dated: New York, New York
April 13, 2026

By: */s/ Guy Cohen*  _____

**DAVIS+GILBERT LLP**
Guy Cohen
Jacklyn M. Siegel
William S. Kukin
1675 Broadway
New York, New York 10019
(212) 468-4800
gcohen@dglaw.com
jseigel@dglaw.com
wkukin@dglaw.com

*Attorneys for Defendants Scholastic Inc. and
Scholastic Entertainment Inc.*

<u>**CERTIFICATION OF WORD COUNT**</u>

I, Guy Cohen, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that this Memorandum of Law complies with the word count limit set forth in Section III(D) of the Court's Individual Practices in Civil Cases and Local Civil Rule 6.3 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, because it contains 3,477 words, excluding the parts exempted by Section III(D) of the Court's Individual Practices in Civil Cases and Local Civil Rule 6.3.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this Memorandum.

Dated: New York, New York
         April 13, 2026

By: */s/ Guy Cohen*
     **DAVIS+GILBERT LLP**
     Guy Cohen
     Jacklyn M. Siegel
     William S. Kukin
     1675 Broadway
     New York, New York 10019
     (212) 468-4800
     gcohen@dglaw.com
     jseigel@dglaw.com
     wkukin@dglaw.com

     *Attorneys for Defendants Scholastic Inc. and Scholastic Entertainment Inc.*