

May 18, 2026

**By ECF**
Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

Re: *Abosch et al. v. Scholastic Entertainment Inc. et al.* **(No. 24-cv-08041)**

Dear Judge Torres:

We write on behalf of Plaintiffs ("Authors") pursuant to the Court's Order (ECF No. 89) and in response to Defendants' ("SEI") pre-motion letter ("Second Letter," ECF No. 91) regarding SEI's anticipated partial motion to dismiss the Second Amended Complaint ("SAC," ECF No. 86). As a threshold matter, the Order states that the parties "may propose a briefing schedule in their pre-motion letters." Authors propose that SEI's motion be due on June 1, Authors' opposition be due on June 22, and that any reply be due on June 29. As SEI intends to incorporate its 3,477-word reconsideration brief by reference, Authors request permission to file a single opposition brief with a word limit of 12,227 words.

**Count II — Fraudulent Inducement.** The Court dismissed Count II because it found Authors had not specified what was concealed and why it was fraudulent. The SAC cures that deficiency, and SEI's rebuttals do not hold up. SEI argues the SAC fails to plead Gurman's statements were "knowingly false" with particularity under FRCP 9(b). This argument misreads the Rule: only the *circumstances* of fraud must be pled with particularity, while scienter may be alleged generally. Moreover, New York law rejects the notion that statements cannot be "deemed fraudulent unless they were known to be false." *Bennett v. Judson*, 21 N.Y. 238, 240–41 (1860) (agent's representations "could not be honestly made when he had not the slightest knowledge of the subject"); *Berry v. Am. Cent. Ins. Co. of St. Louis*, 132 N.Y. 49, 54-55 (1892) (misrepresentation of law fraudulent even where agent believed it; principal "presumed to have known" falsity). The SAC identifies the specific speakers (Gurman), dates (February 24 and November 16, 2016), and false content – namely, that Authors could not already license their Play under the 2016 Agreement without a further [2017] agreement. SAC ¶¶ 38, 47, 85, 99. SEI's characterization of these statements as mere "opinion" fares no better. First, misrepresentations of legal effect *can* be actionable as fraud in New York, even when arguably "opinions." *See Nat'l Conversion Corp. v. Cedar Bldg. Corp.*, 23 N.Y.2d 621, 628 (1969). Second, Gurman's statements were unambiguous assertions of existing fact – that no binding legal relationship existed and that a new agreement was legally necessary. SAC ¶¶ 38, 47.

*Falsity and agency.* The Agreement's text identifies SEI as a "Party" and includes a warranty as to SEI's "full prior knowledge and consent." ECF 86-1 at 11. SEI's own executive, Gary Hymowitz, admitted at deposition that Gurman "acted as our agent" and "negotiated the terms on both sides." SAC ¶ 101. That admission is dispositive: an agent's knowledge is imputed to its principal as a matter of law. *See* Restatement (Third) of Agency § 5.03; *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 468 (2010) ("Agency law presumes imputation even where the agent acts less than admirably, exhibits poor business judgment, or commits fraud"). There is no separate inquiry required into what "anyone at Scholastic actually knew" independently, because the law treats the agent's knowledge as the principal's knowledge. Agency principles are unambiguous: a principal is bound by agreements its agent negotiates on its behalf, regardless of whether the principal is a formal signatory. *See* Restatement (Third) of Agency § 6.01. SEI's contention that it "was not a party" to the 2016 Agreement and thus "cannot be bound by it" is belied by its own senior executive's sworn testimony. Further, SEI's affirmative representations (through

1

# KLARIS

Gurman) are belied by SEI's acceptance of benefits flowing from the 2016 Agreement, and SEI's election to retain those benefits (and thus adopt the obligations its agent made to procure them). *Bennett*, 21 N.Y. at 239; *Mayer*, 115 N.Y. at 561. The SAC does not rely on the deposition testimony alone, it also alleges internal Scholastic communications showing SEI's awareness that it did not own the Play, which is entirely inconsistent with its current position that the 2017 Agreement was not "necessary". (ECF 78-1, at 11.)

*Apparent Authority*. Defendants argue that because Gurman relayed "that SEI did not intend to sign the [2016] agreement", this somehow (1) proves that Scholastic was not bound by it; and (2) means Gurman could not have had "apparent authority". But first, "signing" an agreement and being *bound* by it are distinct. The law recognizes many situations in which a person who does not "sign" an agreement can still be "bound" by it, or even a "party" to it. *Walton v. Comfort Sys. USA (Syracuse), Inc.*, 155 F.4th 144, 161 (2d Cir. 2025). Second, Gurman's pre-execution statements were superseded by the agreement's express warranty as to SEI's "full prior knowledge and consent." "[W]here a plaintiff has gone to the trouble to insist on a written representation that certain facts are true, it will often be justified in accepting that representation rather than making its own inquiry." *DDJ Mgmt., LLC v. Rhone Grp. L.L.C.*, 15 N.Y.3d 147, 154 (2010). Crucially, Defendants' focus on Gurman's authority to contract ignores Scholastic's *ratification* of that contract. Principals who "retain or demand the fruits of a contract obtained by unauthorized representations of an agent, 'stand in the same position as if they had made the representation or authorized it to be made.'" *Harriss v. Tams*, 258 N.Y. 229, 237 (1932). Thus, even if the contract was unauthorized at inception, Scholastic became bound when it "refuse[d] to relinquish an advantage [it] gained through an unauthorized misrepresentation of [its] agent." *Id.*

*Timeliness.* Count II is not time-barred. Only on November 11, 2024 did SEI reveal for the first time that it knew the 2016 Agreement was valid and binding on SEI. The limitations period therefore did not begin to run until that date at earliest. *See* CPLR § 213(8). SEI actively concealed its fraud by affirmatively blocking Authors from reviewing the SEI-Theaters agreement. SEI cannot now argue that Authors failed to exercise diligence when SEI itself ensured that diligence was impossible. Reliance was reasonable for the same reason. Defendants now argue that SEI's refusal to be a "signatory" should have raised suspicion. But suspicion is not discovery. *Sargiss v. Magarelli*, 12 N.Y.3d 527, 532 (2009).[1]

**Count VI — Implied Covenant of Good Faith and Fair Dealing.**[2] SEI's reconsideration motion does not demonstrate that the Court overlooked controlling case law — SEI *admits* it presented that case law front-and-center in its briefing – but merely attempts to reargue its untenable position that the implied covenant should be ignored to deny Authors the only "fruits" even possibly found in the 2017 Agreement. SEI argues that the implied covenant cannot negate the 2017 Agreement's express terms, citing *Singh v. City of N.Y.*, 40 N.Y.3d 138 (2023) and *Moran v. Erk*, 11 N.Y.3d 452 (2008). The Court has already carefully considered and rejected this precise argument, recognizing that *Moran* did not involve the surrender of an exclusive license, and that "where 'it is necessary to read an obligation of good faith in order to avoid rendering a contract promise illusory,' the Court 'will not hesitate" to do so. Order, at 14. The Court then found that interpreting the 2017 Agreement to impose no obligation on SEI to exploit the Play, despite having the exclusive right to do so, would "render the contract illusory" and deprive Plaintiffs of the "fruits of the contract." *Singh* does not alter this analysis. The contract in *Singh* was supported by other consideration (a government license), and thus, overriding an express term was not necessary to avoid rendering it illusory. As this Court noted, "if the 2017 Agreement has any 'fruits,' it

---

[1] Count II is also timely because even the six-year period was "tolled" under New York's "fiduciary tolling" and "continuous representation" doctrines.

[2] Authors object to SEI's inappropriate attempt to circumvent the Court's page limit for pre-motion letters by "incorporating" its entire 17-page reconsideration brief in its Second Letter.

# KLARIS

is royalties, and because Plaintiffs 'can only receive them through [SEI's] efforts,' an implied obligation exists." Authors allege that SEI has "refus[ed] to entertain countless requests from foreign markets to license the Play overseas, repeatedly reject[ed] offers from top-tier theatrical licensing agencies to license the Play, and provid[ed] no independent right to [Plaintiffs] to license the Play themselves." These allegations continue to state a claim.

**Count X — Declaratory Judgment as to SEI's Obligations.** SEI argues erroneously that the Court dismissed Count X with prejudice. Count X seeks (a) a declaration that SEI has an ongoing duty to exploit the Play, and (b) in the alternative, a declaration that the 2017 Agreement is void *ab initio* for lack of mutuality. The Order held that "[i]nterpreting the 2017 Agreement to impose no obligation on Scholastic to exploit the Play, despite Scholastic having the exclusive right to do so, would 'render the contract illusory.'" *Id.* at 15. Nonetheless, it found that an illusory construction could be avoided by inferring that "an implied obligation exists." *Id*. at 16 ("Because the Court infers an implied covenant … the 2017 Agreement is not illusory.") Having found for Plaintiffs on two mutually-exclusive grounds, it dismissed the alternative ground while leaving the primary extant. The Court carefully limited the partial dismissal of Count X to that narrow issue. *Id*. at 21 ("only to the extent Plaintiffs seek a declaration that the 2017 Agreement is illusory"). SEI now challenges the sole basis for that holding, arguing that New York law does not permit the implied covenant to be inferred in this circumstance. Even assuming *arguendo* reconsideration were granted, the consequence would be the Court's alternative holding: that such interpretation "would 'render the contract illusory." On its face, the Order plainly did not intend to preclude Plaintiffs from raising that alternative argument in opposition to a motion for reconsideration. In any event, because the disposition of Count X will necessarily be decided by the portion of SEI's motion seeking reconsideration, the issue is moot for the portion seeking dismissal under 12(b)(6). Should reconsideration be denied, the dismissed portion of Count X will remain dismissed. Should it be granted, that dismissal would necessarily be vacated.

Defendants improperly advance arguments that appear for the first time in their Second Letter, refer to matters outside the pleadings, "repeat 'arguments already briefed, considered and decided,'" and "advance new facts, issues or arguments not previously presented" (*Ferring B.V. v. Allergan, Inc.*, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013)) – all without citing any "controlling decisions" that were "overlooked."[3] In the unlikely event the Court considers these arguments, Plaintiffs address them briefly.

*Statute of Limitations*. SEI improperly raises the same argument made and rejected on the prior motion. This argument "misconceives the nature of a statute of limitations; it does not make an agreement that was void at its inception valid by the mere passage of time." *Riverside Syndicate, Inc. v. Munroe*, 10 N.Y.3d 18, 24 (2008). *See Faison v. Lewis*, 25 N.Y.3d 220, 230 (2015); *Liggett v. Lew Realty LLC*, 42 N.Y.3d 415, 422 (2024). New York's highest court has spoken decisively on this point, and SEI's relentless pressing of an unpublished federal summary order changes nothing.

*Cast Album / Sheet Music*. Defendants' reliance on *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 2018 U.S. Dist. LEXIS 114576 (S.D.N.Y. June 28, 2018) is misplaced. That court found the parties had committed to specific, defined "Binding Terms" — in a document expressly titled "Binding Terms Relating to $3,200,000 Loan." The Cast Album provision bears no resemblance: it is a bare "agreement to agree" in the future, with no committed framework, defined obligations, or binding outcome. *See CBI Cap. LLC v. Mullen*, No. 19 CIV. 5219 (AT), 2020 WL 4016018, at *5 (S.D.N.Y. July 16, 2020). In any event, the (vacated) *Rocky Aspen* decision ultimately found the agreement unenforceable for lack of mutuality. Scholastic's other arguments about the Cast Album and Sheet Music erroneously presuppose that Authors did not already possess such rights. But as this Court correctly recognized, "the 2017

---

[3] Defendants also make numerous highly misleading assertions – such as the claim that "Adaptors were represented by counsel in 2016 and 2017" and that "Adaptors negotiated hard to secure Scholastic's agreement to [a] provision" under which Scholastic committed itself to nothing. Authors will disprove these meritless claims at trial.

# KLARIS

Agreement only '*reduced* [Plaintiffs'] rights in this regard—trading a right they already had for the mere promise to negotiate for that right." Order, at 15. Finally, it is telling that Scholastic focuses on what the *theaters* could authorize, while conspicuously avoiding the question of what *Scholastic's own agent* could authorize. *See Kirschner*, 15 N.Y.3d, at 465 ("A corporation must [be] responsible for the acts of its authorized agents even if particular acts were unauthorized.")

*Royalties[4] Do Not Cure Lack of Mutuality.* Defendants improperly allege, based on uncited sources outside the pleadings, that each Author received an average of $6,166 in annual royalties over approximately 9 years, in its latest attempt to argue that the lack of mutuality has retroactively been "cured." But if the 2017 Agreement was void *ab initio*, subsequent performance cannot cure the original formation defect — a void contract cannot be ratified. Restatement (Second) of Contracts § 163. Indeed, Scholastic's argument implicitly requires that *any* amount of royalties – whether one dollar or one million – would likewise be "consideration", and that the parties intended to leave this apparently-unimportant detail to Scholastic's sole, future discretion. Obviously, they did not. *See Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91 (1917) ("We are not to suppose that one party was to be placed at the mercy of the other.") Scholastic's argument "confuses performance of the terms with an obligation to perform under the contract. The fact that Defendant voluntarily continued to [render some performance] is irrelevant; the question is whether it had a legally binding obligation to continue to do so." *Day v. Fortune Hi-Tech Mktg., Inc.*, 536 F. App'x 600, 604–05 (6th Cir. 2013) ("subsequent performance cannot excuse a want of consideration"). *See Zeyher v. S. S. & S. Mfg. Co.*, 319 F.2d 606, 608 (7th Cir. 1963) ("we see no merit in the contention [that] performance under the 'contract' obviated whatever lack of certainty or mutuality may have existed when the 'contract' was made. This argument presupposes a valid contract.")

*Declaratory Judgment Ripeness.* A declaratory judgment claim is ripe when there is a real and immediate controversy about the existence of legal rights. *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 388 (2d Cir. 2005). SEI actively disputes those rights in this very proceeding, arguing it has "no obligation to exploit the Play." That is an existing, live dispute — not a hypothetical future one. It is present, concrete, and actively contested. Indeed, the SAC alleges prior breaches. SAC ¶¶ 77-78.

For these reasons, Plaintiffs respectfully submit that Defendants' motion should be denied.

Very Truly Yours,

By: /s/ Lacy ("Lance") H. Koonce, III

Lacy ("Lance") H. Koonce, III
161 Water Street, Suite 904
New York, NY 10038
(646) 779-4882
Lance.Koonce@klarislaw.com

*Attorneys for Plaintiffs Danomalous Productions LLC; Danny Abosch; and John Maclay*

---

[4] Scholastic's new theories about finding consideration in "commercially reasonable efforts" to accord credit (for the very exploitations it now seeks to preclude) fail by their own logic. Credit, like royalties, depends on a condition entirely within Scholastic's control – the very licensing it seeks the right to refrain from.

4